In re MAILMAN STEAM CARPET
CLEANING CORP., Debtor.

Gary R. LeBlanc, Appellant,

v.

Richard P. Salem, Trustee,
Etc., Appellee.

No. 99–1170.

United States Court of Appeals,
First Circuit.

Heard Sept. 13, 1999.

Decided Nov. 2, 1999.

**2**

Gary L. LeBlanc, pro se ipso, for appellant.

Jon C. Cowen, with whom George A. Berman and Posternak, Blankstein & Lund, L.L.P. were on brief, for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and LIPEZ, Circuit Judge.

SELYA, Circuit Judge.

Acting in his capacity as a bankruptcy trustee, Richard P. Salem sought and received court approval to abandon certain property of the bankruptcy estate. A disgruntled creditor, Attorney Gary R. LeBlanc, filed an adversary proceeding against Salem, alleging negligence and breach of fiduciary duty. The bankruptcy court converted Salem's ensuing motion to dismiss into a motion for summary judgment and granted it on the ground that Salem could not be held personally liable because he had acted pursuant to a court order. On appeal, the district court endorsed this ruling. LeBlanc presses forward. We reject Salem's suggestion that the lower courts lacked jurisdiction to entertain LeBlanc's quest, but we agree that Salem's actions are entitled to protection under the doctrine of derived judicial immunity. Consequently, we affirm.

## I. BACKGROUND

Following conventional practice, we assay the facts in the light most favorable to the party opposing *brevis* disposition (here, LeBlanc) and draw all reasonable inferences in his favor. *See Desmond v. Varrasso (In re Varrasso )*, 37 F.3d 760, 762–63 (1st Cir.1994) (holding that Fed. R. Bankr.P. 7056, which makes Fed.R.Civ.P. 56 applicable to bankruptcy proceedings, requires the application of traditional summary judgment principles in bankruptcy proceedings). We do not give credence to empty rhetoric, however, but credit only those assertions that are supported by materials of evidentiary quality. *See Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990) (warning that a party opposing summary judgment cannot rely on "conclusory allegations, improbable inferences, and unsupported speculation"). Here, the record on appeal lacks crucial documents, so in many instances we simply present the parties' contradictory positions. For the same reason, we use round numbers throughout, conscious that they are approximations.

In October 1990, Mailman Steam Carpet Cleaning Corp. (Mailman), represented by LeBlanc, won a judgment in excess of

$450,000 against Alfred C. Lizotte and, to secure it, attached a parcel of commercial real estate owned by Lizotte. At the time, a corporation controlled by Lizotte (the Corporation) operated a service station on the premises as a franchisee of Gulf Oil, Inc. (Gulf). LeBlanc had represented Mailman on a contingent fee basis in the original litigation, and both the judgment and the fee remained uncollected when, on March 15, 1993, Mailman filed a voluntary bankruptcy petition under Chapter 7, 11 U.S.C. §§ 701–766 (1994). Salem was appointed trustee and he embarked upon the administration of the estate.

On September 18, 1995, Salem filed a notice of intention to settle the claim against Lizotte for $100,000 and sought court approval of the plan. LeBlanc, *qua* creditor, filed an objection in his own right. The court held a hearing on October 19, during which Salem introduced an appraisal that estimated the fair market value of the real estate, including the fixtures and equipment associated with the Corporation's business, at $390,000. In an apparent effort to segregate the value of the property attached, the appraiser carved out $175,000 of this total and assigned it to the "[l]and, buildings and installations" owned personally by Lizotte. Even this reduced amount was not free and clear, for the real estate was encumbered by a prior first mortgage that secured $100,000 in debt.

These figures proved controversial. LeBlanc maintained that the real estate was worth much more (say, $500,000), but he offered no concrete evidentiary support for this claim. No other creditor objected to the proposed settlement, and the bankruptcy court eventually approved it, subject to the following proviso:

> If the gas station is sold within two years from [Oct. 19, 1995], the trustee may move for revocation of this approval. Depending on the facts of the sale, the court will then either confirm or revoke its approval.

The court denied LeBlanc's subsequent motion to alter or amend and ordered Salem to deliver an executed discharge of the lien, to be held in escrow pending payment of $100,000 to the estate.

In May 1996 (roughly seven months after the court's conditional approval of the settlement), Lizotte and the Corporation sold the property for some $560,000. The substance of the transaction is in dispute, and the record on appeal is devoid of any satisfactory evidence of its terms. We do know, however, that $100,000 went to the bankruptcy estate to complete the settlement and that a like amount went to the first mortgagee to discharge the prior lien. Salem asserts that the balance represented business assets of the Corporation and was paid out accordingly. LeBlanc contends that this allocation was a sham and that Lizotte fraudulently diverted $360,000 that should have been available to his creditors (including Mailman and, derivatively, LeBlanc himself).

Shortly after the sale, LeBlanc moved to revoke the approval order and to compel Salem to seek its revocation. While these motions were pending, the bankruptcy court granted LeBlanc permission under Fed. R. Bankr.P.2004 to examine Lizotte, Gulf, and the Corporation, limited, however, to information concerning the terms of the sale and to whom the proceeds went. The court later rebuffed LeBlanc's attempt to examine the buyer, Peterborough Oil Co. The permitted discovery was not completed until the winter of 1997–1998.

In March 1998, Salem notified Mailman's creditors that he intended to abandon the reserved right to seek revocation of the Lizotte settlement. LeBlanc—and LeBlanc alone—opposed abandonment. At a hearing held on April 15, 1998, LeBlanc again accused Lizotte of chicanery and described the results of his investigation. He made three main points: (1) at the Rule 2004 examination, Lizotte could recall no specific business assets that were exchanged for the $560,000 purchase price; (2) neither the purchase-and-sale agree-

ment nor the recorded deed mentioned any assets other than the improved real estate; and (3) the deed listed the sale price of the real estate at $300,000. Le-Blanc failed to persuade, and the bankruptcy court overruled his objection and authorized Salem to abandon the right to seek revocation.[1]

That same day, LeBlanc filed an adversary proceeding against Salem, alleging negligence and breach of fiduciary duty stemming from Salem's failure to seek revocation of the settlement. Salem moved to dismiss the complaint on the ground that it failed to state an actionable claim. The bankruptcy court treated the motion as one for summary judgment and granted it on the ground that the complaint constituted an unfair attempt to hold Salem personally liable for taking an action that the court had sanctioned. The district court upheld the ruling and this appeal followed.

## II. THE JURISDICTIONAL ISSUE

 Salem questions the bankruptcy court's subject matter jurisdiction over this adversary proceeding. Because it would be inappropriate for this court to address the merits in the absence of a genuine case or controversy, see *Steel Co. v. Citizens For a Better Environment,* 523 U.S. 83, 93–94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), we cannot ignore this challenge.

LeBlanc's complaint premises his right to sue on 28 U.S.C. § 959(a), which provides in relevant part:

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property.

Salem correctly observes that the abandonment at issue here did not arise in the course of "carrying on business" by the

trustee and thus suggests that LeBlanc's failure to obtain leave from the bankruptcy court before instituting his adversary proceeding renders that proceeding a nullity. This approach relies on two faulty premises, namely, (1) that section 959(a) is the exclusive source of jurisdiction for such a proceeding, and (2) that, in all events, Le-Blanc's misplaced reliance on section 959(a) forecloses consideration of any other jurisdictional source.

### A

The first premise rests on the view that by allowing a certain category of suits to proceed without prior leave from the appointing court, section 959(a) negatively implies that leave is required in all other cases. But this view throws out the baby with the bath water. Over a century ago, the Supreme Court as a matter of federal common law barred suits against receivers in courts other than the court charged with administration of the estate, explaining that leaving litigants free to sue receivers in other courts would effectively "take the property of the trust from [the receiver's] hands and apply it to the payment of the plaintiff's claim, without regard to the rights of other creditors or the orders of the court which is administering the trust property." *Barton v. Barbour,* 104 U.S. (14 Otto) 126, 129, 26 L.Ed. 672 (1881); see also *Vass v. Conron Bros. Co.,* 59 F.2d 969, 970 (2d Cir.1932) (L. Hand, J.) (holding *Barton* applicable to bankruptcy trustees). Congress responded by passing the predecessor of the present section 959(a) to suspend the approval requirement for suits arising in the course of carrying out business connected with trust property. Subject to this exception, a long line of cases has required leave from the bankruptcy court before allowing an action against the trustee to proceed *in another tribunal.* See, e.g., *In re Linton,* 136 F.3d 544, 545 (7th Cir.1998) (collecting cases); cf. *Unsecured Creditors Comm. of Debtor STN*

---

1. LeBlanc appealed this order. As of the date of oral argument on this collateral matter, his

direct appeal was still pending in the district court.

*Enters. v. Noyes* (*In re STN Enters.*), 779 F.2d 901, 904 (2d Cir.1985) (requiring bankruptcy court approval for creditors to pursue an adversary proceeding against a third party).

■ Neither these precedents nor the rationale that undergirds them have any application to proceedings in the court that is overseeing administration of the bankruptcy estate. Congress enacted section 959(a) to carve out an exception to the *Barton* rule, not to expand the leave requirement to a new category of cases. *See McNulta v. Lochridge,* 141 U.S. 327, 330, 12 S.Ct. 11, 35 L.Ed. 796 (1891) ("The act does not deprive any one of the right to sue where such right previously existed, but gives such right in certain cases....."). We hold, therefore, that any negative implication which can be extracted from the language of section 959(a) runs only to cases brought in courts other than the bankruptcy court. *Accord Estate of Reich v. Burke* (*In re Reich* ), 54 B.R. 995, 997–98 (Bankr.E.D.Mich.1985) (holding that prior approval by the bankruptcy court is not a prerequisite for filing a creditor action against the trustee *in that court* ).

■ Of course, sidestepping this obstacle does not necessarily leave a clear path for LeBlanc. As the proponent of the suit, he still bears the onus of establishing subject matter jurisdiction. *See Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir. 1998). Here, however, jurisdiction exists. Bankruptcy trustees have the capacity to sue and be sued, *see* 11 U.S.C. § 323(b); federal district courts have original jurisdiction over all civil proceedings related to bankruptcy cases, *see* 28 U.S.C. § 1334(b); and the Massachusetts federal district court, acting pursuant to 28 U.S.C. § 157(a), has delegated such matters to bankruptcy courts, *see* D. Mass. R. 201. Because LeBlanc's claim obviously relates to the underlying bankruptcy case—he says that Salem breached his duty under 11 U.S.C. § 704—the question becomes whether LeBlanc is a proper party to pursue the cause of action. We think that he is.

The Bankruptcy Code provides that "[a] party in interest, including ... a creditor ..., may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Chapter 7 includes no comparable provision, but in practice bankruptcy courts routinely entertain adversary proceedings against Chapter 7 trustees. *See, e.g., Yadkin Valley Bank & Trust Co. v. McGee,* 819 F.2d 74 (4th Cir.1987); *Kowalski–Schmidt v. Forsch* (*In re Giordano* ), 212 B.R. 617 (B.A.P. 9th Cir.1997); *United States ex rel. George Schumann Tire & Battery Co. v. Grant* (*In re George Schumann Tire & Battery Co.*), 145 B.R. 104 (Bankr.M.D.Fla. 1992); *White County Bank v. Leavell* (*In re Leavell* ), 141 B.R. 393 (Bankr.S.D.Ill. 1992). In light of the structure and purposes of the Bankruptcy Code, we agree with these courts that the right to be heard applies in the liquidation context.

**B**

■ This brings us to the second premise of the jurisdictional challenge: the idea that, since LeBlanc's complaint incorrectly predicates jurisdiction on section 959(a), his adversary proceeding must be dismissed. This is pettifoggery, pure and simple, and we need not linger over it.

■ Affirmative pleading of the precise statutory basis for federal subject matter jurisdiction is not required as long as a complaint alleges sufficient facts to establish jurisdiction. *See Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1063–64 (2d Cir.1988); *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1212 (9th Cir.1980); 2 James Wm. Moore et al., *Moore's Federal Practice* § 8.03[3] (3d ed.1999). In this vein, we have recognized that federal subject matter jurisdiction may be established by reading a complaint holistically, "even though the jurisdiction expressly asserted was improper." *Massachusetts v. United States Veterans Admin.,* 541 F.2d 119, 122

(1st Cir.1976); *cf. Viqueira,* 140 F.3d at 18–19 (considering and rejecting on the merits a possible source of jurisdiction not explicitly referenced in the complaint). These general principles apply in the bankruptcy context. *See* Fed. R. Bankr.P. 7008 (incorporating Fed.R.Civ.P. 8).

Here, LeBlanc's complaint identified his creditor status and charged that Salem breached his fiduciary duty as a Chapter 7 trustee. These averments, coupled with the statutory provisions alluded to above, satisfy us that LeBlanc's complaint, on its face, alleged sufficient facts to support jurisdiction, notwithstanding its mistaken reference to section 959(a). *See J. Baranello & Sons v. Baharestani (In re J. Baranello & Sons ),* 149 B.R. 19, 27 (Bankr.E.D.N.Y. 1992).

## III. THE MERITS

We next consider the bankruptcy court's dismissal of the adversary proceeding. We again divide our discussion into two segments.

### A

■ As mentioned above, the bankruptcy court converted Salem's motion to dismiss for failure to state a claim into a motion for summary judgment. Applicable procedural rules authorize such a step under certain circumstances, *see* Fed. R. Bankr.P. 7012(b) (making applicable Fed. R.Civ.P. 12(b)), and LeBlanc does not contest the use of the device here. We mention conversion, however, because the bankruptcy court, by not acting on the

motion to dismiss *simpliciter,* impliedly held that LeBlanc's complaint—which omitted any reference to court approval of the abandonment—stated a valid cause of action.[2] We examine this premise.

The Bankruptcy Code provides that a Chapter 7 trustee shall, inter alia, "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(1). LeBlanc's complaint alleges in substance that Salem negligently failed to conduct an adequate investigation and acquiesced in a settlement incompatible with the best interests of creditors, thereby violating his fiduciary duty. So stated, the claim derives solely from the trustee's statutorily-inspired duty of care. *See infra* note 4. Hence, its validity depends, in the first instance, on whether an action for negligence lies against a bankruptcy trustee in his individual capacity.[3]

■ The exact parameters of a trustee's fiduciary duties and the potential penalties for breach thereof are not fixed by the Bankruptcy Code, and the case law is somewhat murky at the edges. It is settled, however, that a bankruptcy trustee may be held personally liable for breach of the duty of loyalty. *See Mosser v. Darrow,* 341 U.S. 267, 271, 274, 71 S.Ct. 680, 95 L.Ed. 927 (1951). The *Mosser* Court surcharged a bankruptcy trustee for expressly permitting two employees to profit by selling securities to the estate, declar-

---

2. Insofar as we can tell, the principal impetus for conversion was the bankruptcy court's desire to take judicial notice of its own prior order. We question whether conversion was necessary to accomplish that end. *See* Fed. R.Evid. 201; Fed. R. Bankr.P. 9017 (making applicable Fed.R.Evid. 201); *see also Cinel v. Connick,* 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994) (holding that, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record"); *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991) (similar); *cf. Bryant v. Avado Brands, Inc.,* 187 F.3d 1271 (11th Cir.1999)

(taking judicial notice of SEC filings in deciding a Rule 12(b)(6) motion to dismiss).

3. We note that LeBlanc's pleading at one point describes Salem's inaction as "willful and deliberate." Viewed in context, this reference seems to denote at most gross negligence. In all events, there is no suggestion that Salem was in cahoots with Lizotte, profited in any way as a result of Lizotte's alleged fraud, or even knew of it. Thus, no matter how this conclusory allegation may be construed, it does not affect our analysis. *See Medina–Munoz,* 896 F.2d at 8.

ing in unqualified terms that "[e]quity tolerates in bankruptcy trustees no interest adverse to the trust." *Id.* at 271, 71 S.Ct. 680.

■ Following *Mosser*, the courts of appeals have split almost evenly on the question of whether a bankruptcy trustee can be held personally liable for negligence (as opposed to deliberate misconduct). *Compare In re Gorski*, 766 F.2d 723, 727 (2d Cir.1985) (responding in the affirmative), *Red Carpet Corp. v. Miller*, 708 F.2d 1576, 1578 (11th Cir.1983) (per curiam) (same), *and Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1357 (9th Cir. 1983) (same), *with Yadkin Valley*, 819 F.2d at 76 (responding in the negative), *In re Chicago Pac. Corp.*, 773 F.2d 909, 915 (7th Cir.1985) (dictum) (same), *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 461–62 (6th Cir.1982) (same), *and Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir.1977) (same).[4] We heretofore have left the question open. *See Lopez–Stubbe v. Rodriguez–Estrada (In re San Juan Hotel Corp.)*, 847 F.2d 931, 937 & n. 5 (1st Cir. 1988); *Connecticut Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 621 (1st Cir.1988).

In our view, *Mosser*, properly construed, strongly indicates that parties interested in the administration of a bankruptcy estate can seek to surcharge the trustee for negligence. While *Mosser* itself involved "a willful and deliberate setting up of an interest in employees adverse to that of the trust," the Court took pains to clarify that "[t]he liability here is not created by a failure to detect defalcations, in which case negligence might be required to surcharge

the trustee...." 341 U.S. at 272, 71 S.Ct. 680. The unmistakable implication of this observation is that, in the absence of deliberate misconduct, negligence suffices for surcharge. Indeed, even the courts of appeals that decline to impose personal liability for negligence draw this inference. *See, e.g., Sherr*, 552 F.2d at 1375 ("A trustee in bankruptcy may be held liable in his official capacity and thus surcharged if he fails to exercise that degree of care required of an ordinarily prudent person serving in such capacity, taking into consideration the discretion allowed."). These courts, however, differentiate between surcharges and personal liability, presumably relying on the *Mosser* Court's statement that "[t]he most effective sanction for good administration is personal liability for the consequences of forbidden acts." 341 U.S. at 274, 71 S.Ct. 680. Because only *willful* misconduct is "forbidden," the argument goes, negligence does not trigger personal liability.

This reasoning is tautological: whether or not negligent conduct is "forbidden" is the question, not part of the answer. More importantly, the reasoning depends on a misunderstanding of the word "surcharge," which is most fittingly defined as "[t]he imposition of personal liability on a fiduciary for wilful or negligent misconduct in the administration of his fiduciary duties." *Black's Law Dictionary* 1441 (6th ed.1990). Given this definition, there is simply no principled way after *Mosser* to avoid the conclusion that a bankruptcy trustee can be personally liable for negligent breach of fiduciary duty. It follows inexorably that LeBlanc's pleading, taken

---

4. Courts sometimes have blurred the important distinction between two types of actions against trustees: breach of fiduciary duty claims brought by parties interested in the administration of the estate, and claims in tort or contract brought by third parties. *See, e.g., Sherr*, 552 F.2d at 1375 (misapplying fiduciary principles to a tort action by a third party). Although a bankruptcy trustee enjoys an immunity vis-à-vis third parties for actions within the scope of his official duties, *see Ziegler v. Pitney*, 139 F.2d 595, 596 (2d Cir.

1943); *see also McNulta*, 141 U.S. at 332, 12 S.Ct. 11 (applying this principle to a court-appointed receiver), that immunity neither extends to *ultra vires* acts, *see Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir.1967), nor protects the trustee against claims for breach of fiduciary duty, *see Mosser*, 341 U.S. at 271, 274, 71 S.Ct. 680. *See generally* E. Allan Tiller, *Personal Liability of Trustees and Receivers in Bankruptcy*, 53 Am. Bankr.L.J. 75 (1979).

in isolation, states a cause of action upon which relief can be granted.

## B

■ Of course, we, like the lower courts, cannot take LeBlanc's complaint in isolation. The bankruptcy court appropriately took judicial notice of its own docket, *see* Fed.R.Evid. 201 (discussed *supra* note 2), and ruled that its order approving abandonment of the right to seek revocation of the Lizotte settlement shielded the trustee from personal liability for effecting the abandonment. The district court endorsed this ruling. We now turn to its merits, affording de novo review. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990).

■ Once again, the starting point for our analysis is *Mosser.* In that case, the Court outlined a mechanism through which a bankruptcy trustee may avoid personal liability:

> The practice is well established by which trustees seek instructions from the court, given upon notice to creditors and interested parties, as to matters which involve difficult questions of judgment.... [If the challenged arrangement] was of advantage to the trust, this might have been fully disclosed to the court and the creditors cited to show cause why it should not have been openly authorized.

*Mosser*, 341 U.S. at 274, 71 S.Ct. 680. Following *Mosser*, this court has explained that a trustee acting with the explicit approval of a bankruptcy court is entitled to absolute immunity, as long as there has been full and frank disclosure to creditors and the court. *See Lopez–Stubbe*, 847 F.2d at 942 (citing *Mosser*, 341 U.S. at 274, 71 S.Ct. 680). This view has found near-universal favor elsewhere.[5] *See, e.g., Yadkin Valley*, 819 F.2d at 76; *Lonneker*

*Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir.1986); *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. Unit A Mar.1981) (per curiam). Only if a trustee prevaricates or otherwise acts in bad faith does he doff the cloak of derived judicial immunity. *See Kowalski–Schmidt*, 212 B.R. at 624.

We believe that derived judicial immunity in this context is essential to the orderly administration of bankruptcy proceedings. Allowing suits against trustees for executing explicit court orders would run an unacceptably high risk of turning trustees into "lightning rod[s] for harassing litigation aimed at judicial orders" and would create counterproductive tension between bankruptcy judges and trustees. *Kermit Const. Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir.1976); *see also Valdez v. City of Denver*, 878 F.2d 1285, 1289 (10th Cir.1989) (warning that, without immunity, "[o]fficials employed to implement facially valid court orders could choose: They may disregard the judge's orders and face discharge, or worse yet criminal contempt, or they may fulfill their duty and risk being haled into court").

The case at hand provides a vivid illustration. The merits of the Lizotte settlement have been debated in the Mailman bankruptcy case for years. Recognizing the contentiousness of the issue, Salem wisely sought judicial approval before relinquishing his right to move for revocation of the settlement. After a hearing at which all interested parties (including LeBlanc) were allowed to participate, the bankruptcy court expressly approved Salem's recommendation. Salem is thus entitled to immunity unless there is reason to believe that he acted in bad faith or that the notice of disclosure he provided was deficient.

---

5. Our canvass of the case law reveals only one suggestion to the contrary. *See Quinn v. Fidelity & Deposit Co. (In re Sturm* ), 121 B.R. 443, 448 (Bankr.E.D.Pa.1990) (dictum). *Quinn* concerned a general rather than specif-

ic approval order and relied solely on a pre-*Mosser* case as authority for its holding. *See id.* at 447–48. To the extent that *Quinn* is inconsistent with our holding today, we regard it as wrongly decided.

The record reveals nothing of this sort. No one questions Salem's good faith. As to disclosure, Salem gave all parties in interest timely notice, and there is no basis for a suggestion that he was anything but forthcoming in his statements to the court and the creditors. Indeed, LeBlanc, for all his animadversions, makes no allegations to the contrary. Rather, he maintains that Salem ignored compelling evidence of fraud and failed to conduct an adequate investigation.

We do not gainsay LeBlanc's success in casting a cloud of suspicion over the real estate transaction. But a trustee's obligation to disclose requires only an honest and relatively complete accounting of what he knows, not an account that is letter perfect or born of omniscience.[6] After all, disgruntled parties always will be able, *ex post*, to dig up information that was not available to the court. To prevent a bankruptcy case from becoming Jarndyce and Jarndyce, *see* Charles Dickens, *Bleak House* (1853), the trustee at some point must decide that the costs of gathering more information outweigh the potential benefits. As long as he makes that decision in good faith and reveals the substance of what he knows, no more is exigible.

In this instance, Salem reached such a conclusion and acted upon it. In turn, the bankruptcy court was satisfied that it had enough information before it to approve abandonment. If a mistake has been made, LeBlanc's exclusive remedy is via direct appeal of the court order approving the abandonment. *See supra* note 1.

## IV. CONCLUSION

We need go no further. Although the bankruptcy court properly exercised jurisdiction over this adversary proceeding and the complaint stated a facially valid cause of action, the trustee's derived judicial immunity warranted the entry of summary judgment in his favor.

***Affirmed.***

---

6. To be sure, we stated in *Lopez–Stubbe* that judicial approval is meaningful only after "the court is aware of all pertinent facts." 847 F.2d at 942. But this seemingly categorical statement must be read in context; because that case dealt with intentional misconduct by the trustee, *see id.* at 937 n. 5, candid disclosure would have revealed all the pertinent facts.