Austin v. Brookline                    CV-00-284-JD  09/21/01

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


James Austin and Joanne Dunn

       v.                              Civil No. 00-284-JD
                                       Opinion No. 2001 DNH 171
Town of Brookline, et al.


                              O R D E R


     The plaintiffs, James Austin and Joanne Dunn, bring civil

rights claims and a state law negligence claim against the towns

of Brookline and Hollis, New Hampshire, two Brookline police

officers, and one Hollis officer, arising from the plaintiffs'

arrests for ringing church bells in Brookline around midnight on

July 3, 1997.  The plaintiffs allege that their arrests were

illegal, and Dunn also contends that she was subjected to an

illegal strip search.  The defendants move for summary judgment,

and the plaintiffs object.


                          Standard of Review

     Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c). The record evidence is construed in the light most favorable to the nonmoving party and all reasonable inferences are construed in that party's favor. See Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d 51, 56 (1st Cir. 2001). A material fact is one that "has the potential to change the outcome of the suit under the governing law" and a factual dispute is genuine if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Grant's Dairy--Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000).

A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000). The party with the burden of proof cannot rely on speculation or conjecture and must present "more than a mere scintilla of evidence in her favor." Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 76 (1st Cir. 2001). "All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party." LR 7.2(b)(2).

2

<u>Background</u>

Town residents traditionally rang the bell in the Brookline Church of Christ at midnight on July 3. Brookline Chief of Police Thomas Goulden met with his department in anticipation of the bell ringing. Officer Deborah Clark, who was to be on duty that night, understood that she was to be aware of the ringing and respond to the church if the department received complaints.

At about midnight, the dispatcher told Clark that a complaint had been received from Amanda Conaway about the bell ringing. Clark drove to the church and found about fifteen or twenty people outside. Inside the church, Clark talked with a church representative, Peter Cook, who said that the ringing was almost over. Almost immediately the dispatcher notified Clark that another complaint about the ringing had been made and by 12:30 a.m. the dispatcher said more complaints were coming in.

Clark returned to the church. Men standing downstairs in the church told her that she would have to go up herself if she wanted the ringing to stop. She climbed to the second floor and found James Austin ringing the bell, with the minister, Reverend Jerry Maske, and a church deacon, Keith Venuti, watching. Clark told Austin to stop because people were complaining, but Austin continued to ring the bell.

Austin said that Clark would have to arrest him if she

3

wanted the ringing to stop.  Clark noticed that Austin's breath
smelled of alcohol, and Clark asserts that Austin responded to
her with profanity, although Austin disputes that he used
profanity.  Clark said that she would arrest him if he did not
stop and grabbed the rope to stop the ringing.  Austin contends
that Clark told him he was under arrest.  Austin let go of the
rope and went down the stairs, and Clark followed him out of the
church.

Austin stopped on the church stairs and told his cousin,
Danny Bent, that he was being arrested for ringing the bell.
Bent yelled to the crowd that Clark was arresting Austin for
ringing the bell.  Clark told the crowd that the bell ringing was
over and that they should all leave.  Austin argued with Clark
about whether any complaints had been received about the bell
ringing.  Margaret Hays came forward and said that she had
complained.  Austin's response to Hays frightened her.  Clark
handcuffed Austin and took him into custody.[1]

The crowd became more aggressive as Clark took Austin into

_____

[1]The parties differ on exactly when Austin was arrested.
Austin says that Clark told him he was under arrest while he was
ringing the bell.  Austin and Bent testified that Clark
handcuffed Austin as soon as they came out of the church, and
Bent said that she was in the process of handcuffing Austin when
the exchange with Hays occurred.  Clark states that she arrested
Austin outside of the church when he ignored her order to leave
the area.

custody.  Clark called the Hollis Police Department for back up, and the crowd responded to her call for help by yelling obscenities and sexist remarks at her.  As Clark was putting Austin into the police cruiser, Joanne Dunn confronted Clark, saying Clark would have to arrest her and all of the other people who had been ringing the bell.

Sergeant Steven Desilets from Hollis arrived.  Clark arrested Dunn and handcuffed her.  The turmoil continued, and officers from other towns arrived to help control the crowd. Eventually, after several more arrests, the crowd dispersed.

Clark charged Austin and Dunn with disorderly conduct in violation of N.H. Rev. Stat. Ann. § ("RSA") 644:2 for knowingly refusing to comply with her order to leave the area in front of the church.[2]  Following a bench trial, the court found Austin and Dunn not guilty.  Austin and Dunn brought suit in this court alleging a variety of federal and state claims.


## Discussion

Austin and Dunn allege that their "constitutional rights" were violated because they were illegally arrested by Clark,

---

[2]The defendants did not include a copy of the complaint against Dunn in the record filed for summary judgment but they represent that she was charged with the same offense.

because Brookline failed to properly supervise and train Clark, and because Chief Thomas Goulden failed to properly brief Clark. They bring claims of negligent hiring and supervision against Brookline based on the same circumstances. Dunn also brings a claim that she was subjected to an illegal search, alleging that an unnamed police officer from the town of Hollis told her to remove her pants.

The defendants move for summary judgment with respect to the claims of illegal arrest and negligent supervision against Brookline, Goulden, and Clark, combining their arguments on the merits of the plaintiffs' claims with their defense of qualified immunity. Although the defendants state in their motion that the plaintiffs "fail to plead and substantiate a claim against the Town of Hollis," they do not address the illegal search claim brought by Dunn. Similarly, the defendants reference to the plaintiffs' punitive damage claim, in a footnote, is insufficient to present the issue for summary judgment. Therefore, the court interprets the defendants' motion as one for partial summary judgment, addressing counts one, two, and four.

A. <u>Federal Claims Against Officer Clark</u>

Austin and Dunn argue that their arrests were in violation of their constitutional rights. "Warrantless arrests are

6

permissible when supported by probable cause." <u>Fletcher v. Town of Clinton</u>, 196 F.3d 41, 35 (1st Cir. 1999). "In turn, probable cause exists when the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." <u>Id.</u> (internal quotation omitted).

In this case, Clark charged Austin and Dunn with violating RSA 644:2 for "knowingly refus[ing] to comply with a lawful order of a peace officer, Officer Deborah Clark of the Brookline Police[,] to move from a public place, to wit: Main Street in the Town of Brookline, NH." Def. Ex. D. The issue is whether Clark had probable cause to believe that Austin and Dunn knowingly refused to comply with her order to leave Main Street in Brookline before they were arrested. There appears to be no dispute that the area in front of the church where the crowd had gathered was the area referred to in the complaint as Main Street in Brookline or that the church area constituted a public place within the meaning of the statute. Because the circumstances of each arrest are different, they are considered separately.

7

### 1. Arrest of Austin.

The circumstances of Austin's arrest are disputed. In the complaint, Austin contends that he was arrested in the church while he was ringing the bell and was handcuffed immediately as he left the church. Austin asserts that he did not use profanity, that his cousin yelled to the crowd that he was being arrested, and that Clark was already handcuffing him when the exchange with Margaret Hays occurred. Clark contends that she did not arrest Austin until after they left the church, after she told everyone to leave, and after Austin began inciting the crowd and yelling at Margaret Hays. For purposes of the defendants' motion for summary judgment, however, the facts must be taken in the light most favorable to Austin.

Taken in the appropriate light, the record indicates that Clark told Austin he was under arrest while he was ringing the bell and handcuffed him as soon as they left the church, before the other incidents occurred. Based on that scenario, which Clark denies, Clark would have to have had a reasonable basis to believe that she ordered Austin to leave the church area and he failed to obey her order before either of them even left the church. Since Clark's order inside the church was to stop ringing the bell, not to leave the public church area, that version of events does not fit the offense charged. Therefore,

8

the defendants have not shown that no reasonable jury could find in Austin's favor, if they were to believe his version of events.

The factual dispute about the circumstances of Austin's arrest also precludes summary judgment in Clark's favor based on a qualified immunity defense. In analyzing a qualified immunity defense, the court must first "'determine whether the plaintiff has alleged the deprivation of an actual constitutional right'" and second "'determine whether that right was clearly established at the time of the alleged violation.'" Abreu-Guzman v. Ford, 241 F.3d 69, 73 (1st Cir. 2001) (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)). Only if the first two questions are answered affirmatively does the court consider whether "an objectively reasonable officer, performing discretionary functions, would have understood his or her conduct violated that clearly established constitutional right." Id.

The first two questions are answered affirmatively here. Austin has alleged that the arrest violated his Fourth Amendment rights, as discussed above. The right not to be arrested absent probable cause and the provisions of RSA 644:2 have been clearly established for a long time. See id.; see also Iacobucci v. Boulter, 193 F.3d 14, 23-24 (1st Cir. 1999). The remaining issue is whether an objectively reasonable officer, standing in Clark's shoes, would have found probable cause to arrest Austin while he

9

was ringing the bell for failing to comply with her order to leave the church area.

Despite the absence of probable cause, an officer is entitled to qualified immunity if "[she] had an objectively reasonable basis for believing that [her] conduct would not abridge the rights of others." Iacobucci, 193 F.3d at 23. Stated another way, an officer will be protected by immunity if "'probable cause is at least arguable.'" Fletcher, 196 F.3d at 53 (quoting Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985)). Therefore, the qualified immunity "standard is favorable to the officer, protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Liu v. Phillips, 234 F.3d 55, 57 (1st Cir. 2000) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Based on Austin's version of the circumstances surrounding his arrest, however, there appears to be no objective basis for Clark to have believed she had probable cause to arrest Austin for his failure to comply with her order to leave the public church area, before she gave that order. Clark contends that she is nevertheless entitled to immunity because Austin's conduct could have been the basis for probable cause to arrest him on a different disorderly conduct charge, under RSA 644:2, III(a), II(a), or I.

10

The related crimes defense affords immunity to an officer who did not have probable cause to arrest for the offense charged but the same conduct alleged as a basis for the arrest would provide probable cause to arrest for a related offense.  See Sheehy v. Town of Plymouth, 191 F.3d 15, 19-20 (1st Cir. 1999). In order to employ the related crimes defense, the officer must show that "the crime with which the arrestee is charged and the crime offered to the court as a justification for the arrest must relate to the same conduct" and "the two crimes must share similar elements or be directed generally at prohibiting the same type of conduct."  Id.

All three of the related crimes cited by Clark generally pertain to disorderly conduct.  The crimes, however, aim at distinctly different conduct.  The crime with which Austin was charged, RSA 644:2, II(e) is that he "[k]nowingly refuse[d] to comply with a lawful order of a peace officer to move from any public place . . . ."  The conduct Clark cited in support of the charge was Austin's failure to comply with her order to leave the church area.

The first alternative raised by Clark, RSA 644:2, III(a), prohibits "[m]aking loud or unreasonable noises in a public place, or making loud or unreasonable noises in a private place which can be heard in a public place or other private places,

11

which noises would disturb a person of average sensibilities." While Austin's bell ringing might provide an objective basis to believe probable cause existed to arrest him under RSA 644:2, III(a), Clark did not cite bell ringing as the reason for his arrest. Austin's cited behavior does not involve making loud noises. Similarly, RSA 644:2, I and II(a), which prohibit creating a hazardous condition and violent or threatening behavior in a public place, do not involve failure to comply with an order to leave a public place. Therefore, Clark has not shown that she is entitled to qualified immunity under a related crimes theory.

As Clark has not shown that she is entitled to qualified immunity on summary judgment, due to the factual dispute about the circumstances of Austin's arrest, a trialworthy issue remains on the defense.

### 2. Joanne Dunn

The factual circumstances of Dunn's arrest are much less conflicted than those surrounding Austin's arrest. Despite Dunn's attempt to suggest that Clark never told her personally to leave, she does not dispute that Clark told the crowd outside the church, which included Dunn, to leave. She does not dispute that instead of leaving she was harassing Clark while Clark was taking

12

Austin into custody and putting him in the cruiser.

Dunn raises a question as to whether Clark's order to the crowd to leave was lawful, as required by RSA 644:2, II(e). RSA 644:2, IV(a) provides that a lawful order is any command to prevent a person from committing the offenses in RSA 644:2, or other cited sections, when the officer has reasonable grounds to believe the person is about to commit the offense or her conduct makes the offense imminent, or to prevent the person from continuing to commit such an offense.

Dunn argues that Clark's only reason for arresting her was to prevent her from returning to the church to ring the bell and that she had no reasonable basis to believe that she would do that. The testimony Dunn cites indicates that Clark arrested her because she refused to leave the area, because of her yelling and behavior, and because she was concerned Dunn would continue to ring the bell. Dunn's conduct, including her statement to Clark that she would have to arrest her and everyone else who had been ringing the bell, provides a reasonable basis to believe that she would return to bell ringing. In addition, whether or not Dunn was likely to ring the bell again, the undisputed circumstances at the time Dunn was arrested would support a reasonable basis to believe that Dunn was committing or would imminently commit the offenses listed in 644:2, II(a), (b), (e), and III(a). The

13

orders to leave were therefore lawful.

Based on the circumstances of Dunn's arrest, Clark had probable cause to arrest Dunn for failing to comply with her lawful order to leave the church area. Therefore, Clark is entitled to summary judgment in her favor as to the claims against her brought by Dunn.

B. Federal Claims against Chief Goulden and the Towns of Hollis and Brookline

Since Dunn has not shown that she suffered a constitutional violation based on her arrest, she does not have a claim against Goulden or the towns based on the arrest.[3] See Nieves v. McSweeney, 241 F.3d 46, 50 (1st Cir. 2001). With respect to Chief Goulden, Austin alleges that Goulden failed to properly brief Clark and failed to issue policies and procedures to deal with the bell ringing, both with deliberate indifference to constitutionally protected rights. Austin alleges that Brookline failed to properly train and supervise Clark, which represented the town's policy of deliberate indifference to constitutionally protected rights, that led to Austin's arrest. He makes no

---

[3]As noted above, however, the defendants have not moved for summary judgment on Dunn's claim alleging an unconstitutional search conducted at the Hollis police station. That claim, therefore, is not considered here.

14

claims against the town of Hollis.

To prove his claim against Goulden, Austin must be able to show that Goulden's "conduct or inaction amounts to 'reckless or callous indifference' of [his] constitutional rights and that an 'affirmative link' existed between the constitutional violation and his acts or omissions." Miller v. Kennebec County, 219 F.3d 8, 13 (1st Cir. 2000) (quoting Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989)). To meet the indifference element for supervisory liability, Austin must show "'(1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk.'" Figueroa-Torres v. Toledo-Davila, 232 F.3d 270, 279 (1st Cir. 2000).

The record facts show that Goulden met with the minister of the church prior to July 4, 1997. Reverend Maske told Goulden that he and about twelve church members would be at the church on the night of July 3 for the bell ringing, to avoid vandalism, which had happened in previous years. Goulden understood that the police department would respond if anyone from the church contacted them. Goulden had a meeting with the police officers the last week in June when Goulden explained that the bell ringing event took place and that they were to respond if needed.

15

Clark, who was new in the Brookline department and was a part-time officer, was to be on duty during the evening of July 3. On July 3, Goulden told the full-time officer on duty during the day to stay on with Clark if they were busy. Goulden told Clark to respond to the church if the department received calls about the bell ringing and to enforce the law as in any other situation. That evening was rainy and unusually slow so the full-time officer left and Clark remained on duty alone.

Based on the record facts, Goulden inquired about the bell ringing event and briefed his officers, including Clark, about the event. Even if Austin could show that Goulden had been negligent, mere negligence is insufficient for a supervisory liability claim. See Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994). Nothing in Goulden's conduct or the surrounding circumstances indicates that he was indifferent to whether rowdy bell ringers would be arrested without probable cause. As Austin has not shown any trialworthy issue with respect to his claim against Goulden, Goulden is entitled to summary judgment.

Austin alleges that Brookline failed to properly train Clark which represented a municipal custom or policy of deliberate

16

indifference to constitutionally protected rights.[4]
A municipality is liable under 42 U.S.C. § 1983 only if its
policymaker made a deliberate choice to act or not act in a
certain way and that decision caused a constitutional injury.
See Board of County Comm'rs of Bryan County, Okla. v. Brown, 520
U.S. 397, 404 (1997).  The inadequacy of police training may be a
basis for municipal liability "only where the failure to train
amounts to deliberate indifference to the rights of persons with
whom the police come into contact."  Canton v. Harris, 489 U.S.
378, 388 (1989).  Therefore, a single incident of inadequate
training is not a sufficient basis for municipal liability.  See
Swain v. Spinney, 117 F.3d 1, 11 (1st Cir. 1997).

Austin alleges only that Brookline failed to properly train
Clark, who was a probationary officer.  Even if that were true,
which the facts of record indicate it is not, failure to train
Clark, which allegedly resulted in a single arrest without
probable cause, is insufficient to support Austin's municipal
liability claim.[5]

---

[4]Absent a constitutional violation by the supervisor,
Goulden, Austin's claim that Brookline failed to adequately
supervise Clark also fails.  See Nieves, 241 F.3d at 50.

[5]Clark had completed training at the New Hampshire Police
Academy and was a state certified police officer.  Before joining
the Brookline department, Clark was a part-time police officer in
Hollis for seven years and a part-time patrol officer in

C.  State Law Negligence Claim

Austin also alleges that Brookline breached its duty to train and supervise its police officers when it allowed Clark to be on duty over the night of July 3.  Brookline contends that discretionary function immunity under New Hampshire law bars its liability under Austin's negligence claim.  Brookline also argues that Austin did not properly plead the claim and lacks an expert to prove the claim.[6]

When the New Hampshire Supreme Court abrogated municipal immunity, it retained immunity for discretionary functions.  See Hacking v. Belmont, 143 N.H. 546, 549 (1999).  Municipalities are immune from liability for "acts and omissions that constitute 'the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion.'" Id. (quoting Merrill v. Manchester, 114 N.H. 722, 729 (1974)).  Decisions regarding training and supervision of employees are

_____

Pepperell for two years.  She had received training in Hollis on, among other things, the disorderly conduct statute, crowd and riot control, noise complaints, and arrest procedures.

[6]Although the negligence claim is alleged in the complaint against Brookline, the plaintiffs mistakenly refer in their objection to state law claims against Goulden and ignore the claim brought against Brookline.  There are no state law claims against Goulden in the complaint.

18

discretionary decisions entitled to immunity.  <u>See</u> <u>id.</u> at 550-51.

Therefore, since Brookline is protected by discretionary function immunity from liability under the plaintiffs' negligence claim, summary judgment is appropriate on that claim as well. For that reason, the court does not reach the other grounds raised by the defendants.


<u>Conclusion</u>

For the foregoing reasons, the defendants' partial motion for summary judgment (document no. 14) is granted as to the claims brought in Counts II and IV.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge

September 21, 2001

cc:  Richard C. Mooney, Esquire
     Donald Gardner, Esquire