Jacobson v. Nashua et al.            CV-01-165-B    06/19/02

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Roger J. Jacobson**

    **v.**                                      Civil No. 01-165-B
                                        **Opinion No. 2002 DNH 120**
**City of Nashua, Kurt Gautier**
**and David Lange**



MEMORANDUM AND ORDER

Roger and Lorraine Jacobson[1] have sued the City of Nashua

and Nashua police officers Kurt Gautier and David Lange under 42

U.S.C. § 1983 and various state law theories for unlawful arrest

(Count I), use of excessive force by Officer Gautier (Count II),

the City of Nashua's failure to properly train defendant officers

(Count III), the City of Nashua's failure to correct a pattern of

excessive force among its police officers (Count IV),[2] liability

---

[1] The defendants argue that Lorraine Jacobson is not a
proper party to this action because she has asserted no claims
for which she has standing.  I agree and dismiss her as a party
to this suit.

[2] Counts III and IV contain broad, general language and seem
to overlap.  A fair reading, though, allows me to distinguish the
two claims as I've done here.

for a dog bite (Count V), negligence by the City of Nashua in training and supervising Officer Gautier and his canine (Count VI), and malicious prosecution (Count VII).[3] The defendants have moved for summary judgment, contending that they did not violate Jacobson's rights under federal and state law, and, in any event, they are entitled to qualified immunity.

## BACKGROUND[4]

On September 13, 1998, after an evening of drinking beer and other alcohol, Roger Jacobson ("Jacobson") argued with his wife, Lorraine Jacobson ("Lorraine"), accusing her of failing to cook his steak properly. Intoxicated and angered, Jacobson threw the contents of a mug of beer in Lorraine's direction. Some beer hit the wall behind Lorraine, and some hit the left side of her head. Jacobson then asked Lorraine to call the police in order to help

---

[3] Plaintiff concedes in his objection to defendants' motion for summary judgment (doc. no. 9) that Counts V and VII should be dismissed. Therefore, I dismiss these claims without further analysis.

[4] The parties dispute many facts in this case. For purposes of this memorandum and order, I resolve these disputes and draw all reasonable inferences in Jacobson's favor. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001) (explaining the operation of Fed. R. Civ. P. 56) (citation omitted).

-2-

mediate the situation. Lorraine made the call at 9:47 p.m. by dialing 911 while Jacobson was present. Jacobson then left the house and Lorraine, fearing he might become violent, locked the door behind him.

Officer Patrick Goodridge and Officer David Lange responded to Lorraine's 911 call. The officers first went to the door and spoke with Lorraine. Officer Goodridge's report states that he observed the left side of Lorraine's head to be wet, and that Lorraine initially told the officers that Jacobson threw a beer at her, verbally abused her, and threatened to kill her. Lorraine told the officers that Jacobson had left the house, to which Officer Lange responded that he had been to the house before on a domestic violence call and that Jacobson "was not going to get away with it this time."

Officer Lange went outside to locate Jacobson, and called for assistance from Officer Kurt Gautier and his police dog, "Endy." Officer Gautier arrived within ten minutes, making the total time elapsed since Lorraine's initial call approximately fifteen to twenty minutes. After a short search, Endy led Officer Gautier to Jacobson, who had fallen asleep in his intoxicated state while sitting against a tree in his backyard.

-3-

The light from a flashlight beam and Endy's growl woke Jacobson, who then heard a voice asking him what he was doing.  Jacobson replied, "I am sitting here."  Jacobson then heard a command to show his hands, and responded by turning his hands over slowly, so that his palms faced up.

Immediately thereafter, Endy bit Jacobson on the right arm and pulled him a short distance.  The dog left Jacobson lying on his stomach, at which point the officers handcuffed and arrested him.  At that moment, Jacobson realized that the person who had spoken to him was a police officer.  The officers called an ambulance, and Jacobson was transported to a hospital for treatment of the dog bite.  Later that night, he was taken to the Nashua Police Department on charges of simple assault, criminal threatening and resisting arrest.  The next morning Jacobson was arraigned and released.

In a statement filed with the Nashua Police Department on the night of September 13, 1998, Lorraine stated, "[Jacobson] was drunk and verbaly [sic] abusive; threw beer at me over my head."  Officer Lange claims that when he asked Lorraine why she declined to report that Jacobson had threatened her life, she replied that she loved Jacobson too much and wanted him to get help.  At

-4-

Jacobson's criminal trial in Nashua District Court, Lorraine testified that she did not tell the police officers that he had hurt her or threatened to kill her. Jacobson was acquitted on the charges of simple assault and criminal threatening, although he was convicted of resisting arrest. Jacobson appealed his conviction to superior court for a de novo trial, prior to which the court dismissed the resisting arrest charge. Jacobson then brought this civil rights action.

## STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. See id. at 248.

In ruling on a motion for summary judgment, I must construe

-5-

the evidence in the light most favorable to the non-movant.  <u>See</u>

Navarro, 261 F.3d at 94 (citation omitted).  The party moving for summary judgment, however, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249).  While courts must exercise restraint in granting summary judgment in cases where the nonmoving party must prove "elusive concepts such as motive or intent . . . summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."  Smith v. Stratus Computer, Inc., 40 F.3d 11, 13 (1st Cir. 1994) (citations and internal quotation marks omitted).  I apply this standard in resolving the defendants' motion for summary judgment.

## DISCUSSION

### A. Unlawful Arrest

Defendants argue that Jacobson's unlawful arrest claim is defective because the undisputed facts demonstrate that they had probable cause to arrest him.  I agree.  Even when taken in the light most favorable to the plaintiff, the facts reveal that Jacobson physically manifested his anger at his wife by throwing beer at her, with the result that some of the beer hit the left side of her head.[5]  Jacobson's conduct thus meets the definitions of simple assault by causing unprivileged physical contact, see N.H. Rev. Stat. Ann. 631:2-a(a), criminal threatening, see N.H. Rev. Stat. Ann. 631:4 I.(a), and domestic abuse, see N.H. Rev. Stat. Ann. 173-B:1 I(a), (b).  Because the police officers had probable cause to believe Jacobson committed domestic abuse, they were entitled to arrest him without a warrant.  N.H. Rev. Stat. Ann. 173-B:10 II.

---

[5] The plaintiff at times states that he threw beer at the wall.  However, evidence in the record, including observations made by the police and Jacobson's own deposition testimony, makes it clear that he threw beer either at or over Lorraine's head, and that some of the beer hit Lorraine.

Probable cause is further supported because police officers, when responding to domestic violence situations, are permitted to use their previous knowledge and consider whether a victim is acting out of fear and intimidation or some desire to protect the abuser. Fletcher v. Town of Clinton, 196 F.3d 41, 52 (1st Cir. 1999) (citing United States v. Bartelho, 71 F.3d 436, 438 (1st Cir. 1995) ("noting that officers are often trained not to take the statements of abuse victims at face value, but instead to consider whether the victims are acting out of fear")). Thus, the officers were entitled to rely upon their reasonable judgment and past experience of responding to domestic violence calls at the residence to determine whether Jacobson should be arrested. See id.; Bartelho, 71 F.3d at 438, 441. Accordingly, summary judgment for the defendants on Count I (unlawful arrest) is appropriate.

B. **Qualified Immunity**

Jacobson alleges that Officer Gautier violated his Fourth Amendment right to be free from excessive force during arrest. The defendants argue that Officer Gautier acted reasonably and with justification when he used his canine to assist in arresting Jacobson, and that Officer Gautier is shielded from suit by the

doctrine of qualified immunity.

As I explained in a recent order, see Lee v. Portsmouth, 2002 D.N.H. 064 (D.N.H. Mar. 19, 2002), a two-part inquiry is necessary to determine whether an officer is entitled to qualified immunity from an accusation of excessive force, see Saucier v. Katz, 533 U.S. 194, 200 (2001). First, I must consider whether the facts, "[t]aken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a constitutional right." Id. at 201. If so, the second step "is to ask whether the right was clearly established." Id. "Clearly established for purposes of qualified immunity means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Wilson v. Layne, 526 U.S. 603, 614-15 (1999) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (internal quotation marks omitted). If the law would not have put an objectively reasonable officer on notice that his or her conduct was unlawful, summary judgment based upon qualified immunity is appropriate. See Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.").

-10-

The Fourth Amendment protects against the use of excessive force by police officers in carrying out an arrest. Graham v. Connor, 490 U.S. 386, 394-95 (1989). In the case of a non-resisting, compliant suspect, this freedom is unquestionably an established right. Fernandez v. Leonard, 784 F.2d 1209, 1217 (1st Cir. 1986). Jacobson's account of his arrest places him sitting passively under a tree in his backyard, responding immediately to the officer's command to show his hands, and then being attacked by the police dog. If the jury were to credit Jacobson's testimony, it could find that Officer Gautier violated his Fourth Amendment right to be free from excessive force during arrest.

Next, I must determine whether a reasonable police officer should have known that Officer Gautier's conduct as alleged by Jacobson violated the clearly established right to be free from excessive force during arrest. See Rodriguez v. Comas, 888 F.2d 899, 901 (1st Cir. 1989). The defendants have argued that Gautier's use of force in this case was reasonable. They state that Jacobson was unresponsive to several commands to show his hands, and that Officer Gautier thus held a reasonable belief, based on information he had received that Jacobson had threatened

-11-

to kill Lorraine and might be angry and combative, that Jacobson might be armed, dangerous and unpredictable. While a jury might credit this view of the evidence,[6] the plaintiff disputes it, and, absent conclusive evidence in the record, I cannot credit this view for purposes of this analysis.

When deciding whether a use of force was objectively reasonable, courts typically consider factors such as the severity of the crime, the immediate threat the suspect poses to the arresting officers or others present, and whether the suspect is resisting arrest or attempting to flee. See Alexis v. McDonald's Rest. of Mass., 67 F.3d 341, 352-53 (1st Cir. 1995) (citing Graham, 490 U.S. at 396). The underlying crime at issue

---

[6] The 911 dispatch record, Officer Lange's affidavit, and Officer Goodridge's written report all suggest that Jacobson was angrier and more abusive than he admits, and did in fact threaten to kill his wife. Lorraine Jacobson denies reporting that her husband might be violent or threatened to kill her; however, the First Circuit has observed that domestic violence victims can be uncooperative in criminal investigations/prosecutions against their batterers in up to eighty or ninety percent of cases. See Fletcher, 196 F.3d at 52 (citing Lisa Marie De Sanctis, *Bridging the Gap Between the Rules of Evidence and Justice for Victims of Domestic Violence*, 8 Yale J.L. & Feminism 359, 367-68, 392 n. 197 (1996)). Nevertheless, the possibility remains that Jacobson's version of the facts is accurate, and thus the summary judgment standard demands that I adopt those facts in assessing whether Jacobson's claim is trialworthy.

in this case, domestic abuse, can be severe; however, under his version of facts, Jacobson posed no immediate threat and offered no resistance to the arresting officers.  While I agree with the defendants that the "bite and hold" method employed by Gautier's dog does not constitute excessive force in all cases, the use of such force on a person sitting passively who complies immediately with a command to show his hands - and who is not reasonably thought to be armed - is unreasonable.  See Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 927 (11th Cir. 2000) (officer guilty of excessive force where he intentionally caused police dog to bite an unresisting suspect).  Thus, summary judgment is inappropriate for Jacobson's excessive force claim.

## C.    Federal Claims Against City of Nashua

### 1.   City of Nashua's Failure to Properly Train Defendant Officers

Jacobson contends that the city of Nashua failed to properly train Officer Gautier and other officers in using police dogs and in answering domestic violence calls.  Officer Gautier's potential liability is not enough to impose liability on the city of Nashua.  See Fletcher, 196 F.3d at 55.  Rather, to state a claim for municipal liability under § 1983, Jacobson must

-13-

demonstrate that when Officer Gautier used excessive force during the arrest, he was "'implement[ing] or execut[ing] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers' or [acted] 'pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.'" Id. (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 690, 691 (1978)). When, as here, a plaintiff alleges a failure to train, "the plaintiff must put forth evidence of a failure to train that amounts to 'deliberate indifference to the rights of persons with whom the police come into contact.'" Id. (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Additionally, Jacobson must show a direct causal link between Nashua's policies and Officer Gautier's alleged use of excessive force in this case. Id.

Evidence in the record reflects that the city of Nashua provides extensive training to officers and dogs in its Canine Unit. Officer Gautier's deposition shows that when he began working with his dog in 1996, he completed four months of training with the Boston Police Department K-9 Unit as required by Nashua. In the years that followed, Gautier and his dog

-14-

regularly attended training courses, mainly held in Massachusetts, covering various topics including canine aggression, tracking, and narcotics. Furthermore, a Nashua Police Department S.O.P. for the Canine Unit indicates that members of the unit are experienced police officers, pass an annual physical examination, attend training monthly, and devote one hour of each shift to training, grooming and feeding their dogs.

The Canine Unit S.O.P. explains procedures for using a canine when responding to a call. It instructs canine officers in details such as securing the area around the suspect, announcing to the suspect the presence of the Canine Unit, offering the suspect a reasonable period of time to surrender before the canine begins to search, eliminating distractions to the canine, and requesting assistance for an apprehended suspect when needed. The S.O.P. also contains a section detailing procedures to be followed in the event of a dog bite occurring on or off duty.

Jacobson has offered nothing to suggest a widespread problem with the way that officers in the Nashua Canine Unit handle calls. Officer Gautier's allegedly unsatisfactory conduct on

-15-

this and previous occasions will not sustain this claim because "the fact that 'a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." Rodriquez-Vazquez v. Cintron-Rodrigues, 160 F. Supp.2d 204, 212 (D. Puerto Rico 2001) (quoting Canton, 489 U.S. at 390-91). Accordingly, the city is entitled to summary judgment on Jacobson's failure to train claim.

Jacobson also complains that the defendant officers received inadequate training in responding to domestic violence calls. I have already concluded that the defendant police officers committed no constitutional violation in arresting Jacobson. Therefore, I need not analyze the adequacy of Nashua's domestic violence training procedures. See Evans v. Avery, 100 F.3d 1033, 1039-40 (1st Cir. 1996) (finding that an underlying constitutional violation is a prerequisite to analyzing claim against city).

## 2. City of Nashua's Failure to Correct a Pattern of Use of Excessive Force By Police Officers

Count IV of the complaint alleges that the city of Nashua

"permitted, tolerated, effected, and/or encouraged customs and policies which allowed development of a pattern and practice of unjustified and unreasonable use of force by police officers." Jacobson elaborates that Nashua failed to discipline or retrain officers as necessary, and take other corrective measures in response to uses of excessive force by officers.  Municipal liability can be established by showing that a city failed to respond to repeated complaints of constitutional violations.  See Parrish v. Luckie, 963 F.2d 201, 204-05 (8th Cir. 1992) (city could be held liable when police officer raped woman in custody because it failed to respond appropriately to previous complaints filed against officer); Gentile v. County of Suffolk, 926 F.2d 142, 145-47 (2d Cir. 1991) (county liable for its systematic failure to adequately investigate and discipline police and prosecutorial misconduct).

Jacobson has referenced three previous lawsuits where plaintiffs alleged that Officer Gautier employed excessive force, and suggests that Nashua effectively sanctioned the use of excessive force because there is no indication that the city conducted any investigation of Gautier after these suits were filed.  Of the lawsuits Jacobson mentions, one was dismissed, one

-17-

was settled, and the outcome of the third is unclear.  Without more detail, I cannot conclude that the manner in which the Nashua Police Department responded to these suits was constitutionally deficient.  Compare Consolo v. George, 835 F. Supp. 49, 50-52 (D. Mass. 1993) (finding testimony of expert witness and facts surrounding event of plaintiff's arrest did not constitute sufficient evidence to allow reasonable jury to find de facto policy of city allowing officers to use excessive force when making arrests) with McLain v. Milligan, 847 F. Supp. 970, 978-80 (D. Me. 1994) (denying summary judgment on municipal liability issue where plaintiff made detailed allegations that city's training on use of force consisted of optional video instruction, and investigation consisted of soliciting oral account from police officer with no further action).  Therefore, the city is entitled to summary judgment on Jacobson's failure to correct a pattern of excessive force claim.

D.   **State Law Negligence Claim Against City of Nashua**

Jacobson's final claim involves a state common law claim of negligence against the city of Nashua for its alleged failure "to supervise, control, monitor and train" police officers in the Canine Unit.  Because decisions about training and supervision of

-18-

police officers involve a high degree of discretion, the city of Nashua is immune from liability under New Hampshire's doctrine of discretionary function immunity. See, e.g., Hacking v. Town of Belmont, 143 N.H. 546, 549-51 (1999). Therefore, the city is entitled to summary judgment on Jacobson's negligence claim.

## CONCLUSION

I dismiss Counts V and VII of plaintiff's complaint (doc. no. 1). I grant defendants' motion for summary judgment (doc. no. 8) with respect to Counts I, III, IV, and VI of plaintiff's complaint, and deny with respect to Count II.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge


June 19, 2002

cc:  Steven L. Maynard, Esq.
     Donald E. Gardner, Esq.