**In re John August ENGMAN, Debtor.**

**No. HG 01–13070.**

United States Bankruptcy Court,
W.D. Michigan.

Oct. 8, 2008.

John August Engman, pro se.

Larry A. Ver Merris, Damon, Ver Merris, Boyko & Witte, PLC, John T. Gregg, Barnes & Thornburg LLP, Michael V. Maggio, Trial Attorney, Office of the U.S. Trustee, Grand Rapids, MI, for Trustee.

### OPINION SUPPLEMENTING COURT'S AUGUST 21, 2008 SCHEDULING ORDER

JEFFREY R. HUGHES, Bankruptcy Judge.

On August 21, 2008, the court entered a scheduling order concerning the October 9,

2007 motion James W. Boyd ("Trustee") has filed. That motion seeks: (1) the approval of settlements reached by Trustee with various lienholders and the co-owners of property in which the bankruptcy estate also holds an interest; and (2) the authority to then make distributions on account of those liens and co-interests. An evidentiary hearing is currently scheduled for this month.

The August 21, 2008 scheduling order sets out the standard the court will use in assessing the relief requested by Trustee in his motion. The purpose of this opinion is to provide further explanation as to the court's reasons for adopting that standard.

## BACKGROUND

John Engman is an attorney. He, along with his former wife, Linda Leverich, co-developed a residential condominium project known as Sun–Da–Go. The project had 18 unsold building lots when Mr. Engman filed for Chapter 7 relief. It also included common areas and room for the development of seven additional lots.

The project has sparked controversy since its inception. Mr. Engman and Ms. Leverich spent years contesting ownership and control of the development during their divorce. Mr. Engman also had numerous disagreements with the Sun–Da–Go condominium owners' association concerning both the governance of the association and Mr. Engman's responsibilities as the project's developer.

These disputes have resulted in several claims being asserted against either Mr. Engman individually or against Ms. Leverich and him together. First, Robert Schellenberg has a claim against Mr. Engman for fees and expenses due him as the

receiver for the Sun–Da–Go project. A state court had ordered Mr. Schellenberg's appointment in connection with Mr. Engman's divorce. Mr. Schellenberg contends that his claim is secured by a mortgage lien against Mr. Engman's undivided interest in the Sun–Da–Go property.

Mr. Engman also hired attorneys to represent him. Michael B. Quinn, P.C. was retained in connection with his divorce and Wrigley & Hoffman was retained in connection with the related Sun–Da–Go disputes. Both of these law firms claim that Mr. Engman owes them money for their services and that these obligations are also secured by mortgage liens in Mr. Engman's undivided interest in the Sun–Da–Go property.

And last, the condominium association asserts that both Mr. Engman and Ms, Leverich are indebted to it as the project's joint venturers. However, in this instance, the association contends that its claim is secured by not only a lien against Mr. Engman's undivided interest in the project's property but by a lien against Ms. Leverich's undivided interest as well.

Trustee's motion describes settlements he has reached with all of these lienholders concerning their shares in the Sun–Da–Go property. The amounts originally claimed and the related settlements are:

| | Amount Claimed | Settlement Amount |
| --- | --- | --- |
| Robert Schellenberg | $ 78,816.31 | 68,816.31 |
| Michael B. Quinn, PC | 30,500.00 | 26,500.00 |
| Wrigley & Hoffman | 225,999.61 | 85,708.00 |
| Sun–Da–Go Condominium Association | 101,042.80 | $60,000.00 |

Trustee requests that the court approve these settlements pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure.[1]

---

1. Unless otherwise indicated, all further citations in this opinion to "Rule ____" will be to the Federal Rules of Bankruptcy Procedure.

Trustee's motion also includes a proposed accounting for Ms. Leverich's separate share in the Sun–Da–Go project. The state court had ordered the project to be maintained as a joint venture between Mr. Engman and his former wife after their divorce. Consequently, only Mr. Engman's undivided interest in the realty that comprised the joint venture became property of the estate when Mr. Engman later filed his petition for relief.

As for the other undivided interest, Ms. Leverich delivered a quitclaim deed to Stephanie Scruggs and Sari Jousma, who are Ms. Leverich's and Mr. Engman's daughters, shortly before she passed away in 2003. Trustee's agreement with Ms. Scruggs and Ms. Jousma is to give to them one-half of the proceeds from the Sun–Da–Go property but only after he has first accounted to the condominium association for its claimed lien against both co-owners' interests. Trustee requests that this settlement also be approved pursuant to Rule 9019(a).

Finally, Trustee's motion requests that he be authorized to immediately distribute the settlement amounts to these parties in satisfaction of their claimed liens and co-interests. The distributions are to be made from roughly $325,000 in proceeds realized from lot sales. The former trustee [2] had sold the estate's undivided interests in these lots free and clear of all liens, including those claimed by Mr. Schellenberg, the two law firms, and the condominium association. *See*, 11i U.S.C. §§ 363(b) and (1). Those liens then attached to the proceeds that Trustee now wants to distribute.

As for the co-owner's interests in the lots, the former trustee sold those interests pursuant to Section 363(h).[3] However, he did not secure that authority through the commencement of an adversary proceeding. *Cf.*, FED.R.BANKR.P. 7001(3). Rather, he relied upon Ms. Scruggs' and Ms. Jousma's consent and his promise in return to account for their share of the proceeds realized.[4]

---

**2.** Thomas A. Bruinsma was the Chapter 7 panel trustee originally appointed to administer this case and it was Mr. Bruinsma who negotiated all of the lot sales giving rise to the now available proceeds. However, Mr. Engman filed a motion in March 2006 to remove Mr. Bruinsma as the trustee and Mr. Bruinsma resigned shortly thereafter. Mr. Boyd, who is also a panel trustee, succeeded Mr. Bruinsma.

**3.** 11 U.S.C. § 363(h). Debtor's petition predates the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, § 1501(B)(1), 119 Stat. 23. Unless otherwise indicated, all citations in this opinion to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* will be to the Code as written prior to the BAPCPA amendments. The citation will be "Section ____."

**4.** Both Mr. Engman and Ms. Ludwick have referenced a footnote in a prior opinion to suggest that the former trustee could not have sold the entire fee in these properties without

first commencing an adversary proceeding. *See*, *In re Engman*, 331 B.R. 277, n. 68 (Bankr.W.D.Mich.2005). Apparently, they interpret the footnote as a requirement for the former trustee to have quieted title to the subject lots as a condition precedent. As such, they contend that the former trustee should have long ago addressed Mr. Engman's competing claim in the other undivided interest in the Sun–Da–Go properties. (*See*, *infra*).

However, Mr. Engman and Ms. Ludwick are mistaken. While there may now be a dispute between Mr. Engman and his daughters as to who owns the other undivided interest in the Sun–Da–Go property, that dispute is not relevant to Section 363(h). Its purpose is only to provide authority for the trustee to sell a co-owner's interest in property over that co-owner's objection. Granted, it would typically be in a trustee's interest to secure as broad of authority under Section 363(h) as possible so as to avoid disputes like the one that has developed in this instance. However, Section 363(h) imposes no obligation upon the trustee to in fact do so.

Trustee's plan is to first distribute $60,000 to the condominium association on account of its settled lien amount, to then distribute to Ms. Scruggs and Ms. Jousma their half of the remainder, and then to distribute from the estate's own share the settled lien amounts to Mr. Schellenberg, Wrigley & Hoffman, and Michael B. Quinn, P.C. However, Trustee recognizes that there is a separate set of creditors who have asserted claims against only Ms. Leverich's undivided interest Therefore, Trustee further proposes that the amount to be paid on account of the other undivided interest be interpled with this court in the event any of these other claimants oppose Trustee's outright turnover of Ms. Leverich's share to Ms. Scruggs and Ms. Jousma.

Trustee served his motion upon the mailing matrix filed in this case as permitted by local bankruptcy rules. LBR 9013 (Bankr.W.D.Mich.).[5] Karen Ludwick was the only person to object apart from Mr. Engman. Ms. Ludwick has standing because she is an unsecured creditor. As for Mr. Engman, his standing derives from Trustee's past acknowledgment that Mr. Engman may be eligible for a Section 726 distribution because of the estate's potential solvency.[6]

Both Mr. Engman's and Ms. Ludwick's objections are long and convoluted. It appears, though, that they support Trustee's proposal with respect to Michael B. Quinn, P.C. and Wrigley & Hoffman but that they oppose his proposal with respect to the condominium association and Mr. Schellenberg.

As for Ms. Scruggs and Ms. Jousma, Mr. Engman challenges their claimed co-owner's interest altogether. Mr. Engman contends that Ms. Leverich's attempted conveyance of her undivided interest in the Sun–Da–Go property to her daughters was invalid because it purportedly violated an anti-alienation provision imposed upon both Ms. Leverich and him by their judgment of di voice. Mr. Hngman also contends that he, as the surviving joint venturer, was entitled to Ms. Leverich's undivided interest when she passed away in 2003. Mr. Engman has conceded during these proceedings that this survivorship interest would have transferred to his bankruptcy estate when he commenced his case in 2001. Nonetheless, Mr. Engman contends that Trustee there-

Moreover, this court is not convinced by Mr. Engman's and Ms. Ludwick's suggestion that Mr. Engman's current claim to the other interest creates a problem concerning the prior conveyances. Mr. Engman, by his own admission, could not have obtained this interest until 2006 and then only because he claims that the interest was at that time abandoned from his bankruptcy estate. Therefore, if anyone had a competing interest in the subject lots at the time they were sold, it would have been the former trustee as the representative of the bankruptcy estate. Of course, Mr. Engman is entitled to press his case that he or perhaps Trustee is entitled to the share of the proceeds that Trustee is currently proposing to distribute to Ms. Scruggs and Ms. Jousma. However, Mr. Engman cannot maintain that the former trustee needed his consent as well in order to have fully consummated the 2002, 2004 and 2005 sales of the various Sun–Da–Go lots.

5. Rule 9019(a) contemplates approval of a settlement only after notice and a hearing. However, LBR 9013 permits such relief to be granted without an actual hearing provided appropriate notice is given and no timely objection is filed.

6. Whether the bankruptcy estate will in fact be solvent at the conclusion of this case will depend in part upon how much trustees' attorneys recover as administrative fees for responding to the many objections Mr. Engman and Ms. Ludwick have made and may continue to make. Moreover, a Section 726 distribution to a debtor is never certain until actual close because of the possibility of late claims still being filed. *See*, 11 U.S.C. § 726(a)(3).

after abandoned to him Ms. Leverich's undivided interest in 2006. Therefore, it is Mr. Engman's position that it is he, as opposed to Ms. Scruggs and Ms. Jousma, who is entitled to Trustee's accounting for the other undivided interest in the Sun–Da–Go project.

## DISCUSSION

Trustee's motion focuses almost exclusively upon whether the settlements Trustee has reached should be approved under Rule 9019(a). His fixation on Rule 9019(a) approval is certainly understandable, for in fairness, this court on several prior occasions has itself steered both Trustee and the former trustee in this direction as they have attempted to administer an extremely difficult case over Mr. Engman's and Ms. Ludwick's repeated objections. For example, this court adjudicated a prior effort by the former trustee to distribute proceeds from the sale of Sun–Da–Go lots to the condominium association on account of its claimed lien on the sole issue of whether the underlying settlement the former trustee and the association had reached concerning the same should be approved pursuant to Rule 9019(a).[7] Limiting the adjudication in that fashion was then instrumental in this court's subsequent decision to deny the former trustee's attorneys' request for the considerable

fees they had incurred in attempting to procure that approval.[8]

However, it now appears that more was at issue than merely whether the accommodations that have been reached should be approved or not. What prompts this observation is a too frequently overlooked provision of the Bankruptcy Code:

> After the commencement of a case under this chapter, but before final distribution of property of the estate under section 726 of this title, the trustee, after notice and a hearing, shall dispose of any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title.

11 U.S.C § 725.[9]

This section by no means negates Trustee's request for the Rule 9019(a) approvals he desires. However, Section 725's provisions do seem to address Trustee's additional request for the authority to then distribute the agreed upon amounts from the sale proceeds the estate still holds. Consequently, it is appropriate for this court to determine whether Section 725 in fact applies and, if it does, whether consideration of that section requires an approach different from the one already required for purposes of Rule 9019(a).[10]

---

7. *In re Engman,* 331 B.R. 277 (Bankr. W.D.Mich.2005).

8. *In re Engman,* 389 B.R. 36 (Bankr. W.D.Mich.2008).

9. This court was remiss in not recognizing the potential applicability of Section 725 when the former trustee had previously asked to make such distributions. However, the former trustee was equally remiss in failing to bring that section to the court's attention in any of his motions or oral arguments.

10. All of the parties were given an opportunity to both brief and argue these issues. Trustee lakes the position that the authority to

make the distributions he proposes is not governed by Section 725, but rather by other provisions of the Bankruptcy Code and its attendant rules. *See,* Trustee's 7/18/08 Brief [Dkt. No. 498]. These include Sections 502(a), 704(a)(1), and 726 and Rule 3009. As for Mr. Engman and Ms. Ludwick, they contend that Section 725 may have been applicable at one time but that it is no longer pertinent because the lots have now been sold pursuant to Section 363. *See,* Engman/Ludwick's 7/21/08 Brief, pp. 3–4 [Dkt. No. 500].

The court would further note that the Engman/Ludwick brief is also captioned as a motion to dismiss. Such relief is certainly available in this instance because Trustee's motion

### A. *Does Section 725 Apply?*

The purpose of a Chapter 7 proceeding is simple, at least from the creditors' point of view. It is to pay them what they are due from the proceeds of the debtor's non-exempt assets.

■■■ The Bankruptcy Code accomplishes this objective through the creation of an estate. The bankruptcy estate is intended to be a distinct legal entity. *Farmer v. Crocker National Bank (In re Swift Aire Lines, Inc.)*, 30 B.R. 490, 495 (9th Cir.BAP1983); *In re Dow Corning Corp.*, 270 B.R. 393, 398–99 (Bankr. E.D.Mich.2001); *In re Roy Stanley, Inc.*, 217 B.R. 23, 25 (Bankr.N.D.N.Y.1997); *In re SeaEscape Cruises, Ltd.*, 201 B.R. 321, 323 (Bankr.S.D.Fla.1996). It is capable of entering into binding contracts and committing torts. *In re Macomb Occupational Health Care, LLC*, 300 B.R. 270, n. 11 (Bankr.E.D.Mich.2003). It can both sue and be sued. *Cf.* 11 U.S.C. §§ 323(a) and (b). And, most important, the bankruptcy estate can own property. Indeed, the Bankruptcy Code is very clear that the estate created is to be the repository of all property subject to administration in conjunction with the Chapter 7 case. When the trustee conveys title, title is conveyed on behalf of the estate, not on behalf of the debtor.[11]

Unfortunately, what the bankruptcy estate acquires as its property at the outset of a case is seldom just cash, The estate's property may, as a consequence, require a considerable amount of processing before a distribution to creditors can be made. The sale provisions of Section 363, of course, oversee a critical aspect of this processing. Section 522(*l*) and Section 554(a) also play important roles, since the former dictates how property claimed as exempt is to be removed from the estate and the latter establishes how the Chapter 7 trustee himself can eliminate other property that is of little, if any, value.

■■■ However, these three provisions are not necessarily enough to complete the process, for they address only the estate's interest in the subject property, whether it be a house, an automobile, or an account receivable. For example, while Section 363(b) certainly permits the use, sale or lease of "property of the estate," Section 541(a)(1) is equally clear that the referenced "property of the estate" is limited to only whatever the debtor himself had owned in that property. Consequently, if a lien or a co-interest is also claimed in the same property, then that lien or co-inter-

---

is contested. Fed.R.Bankr.P. 9014. However, the text of the July 18, 2008 document Mr. Engman and Ms. Ludwick filed is that of a brief, not a motion. Therefore, the court is ignoring the Engman/Ludwick brief to the extent it seeks dismissal of Trustee's motion as well. If that is the relief they desire, then it was incumbent upon them to have filed a separate motion requesting the same.

11. A leading bankruptcy treatise describes the bankruptcy estate's crucial role as follows:

Central to a bankruptcy's collective debt-collection scheme is the creation of the bankruptcy estate under Code § 541. Its broad definition of estate property—"all legal or equitable interests of the debtor in property as of the commencement of the case" and "wherever located and by whomever held"—centralizes all of the estate's assets under the jurisdiction of the bankruptcy court.... By establishing the content of the bankruptcy estate, Code § 541 identifies the property which will be available to satisfy creditors' claims. In short, Code § 541's operative scheme may be summarized as follows: Any and all property rights of the debtor at the time of the commencement of the case become part of the estate, and remain property of the estate unless specifically removed from the estate. William F. Norton, Jr. & William F. Norton III, *Norton Bankruptcy Law and Practice* § 61:1 (3rd ed.2008).

est would not be the estate's "property," but rather would remain outside of the estate. *Richardson v. The Huntington National Bank (In re CyberCo Holdings, Inc.)*, 382 B.R. 118, 135–37 (Bankr. W.D.Mich.2008).

 This is not to say, though, that a competing lien or interest cannot be accounted for in conjunction with one of these provisions. For example, the Chapter 7 trustee might sell only the debtor's undivided or encumbered rights in the subject property. In that event, the competing lien or interest would be addressed as part of the sale itself, with the proceeds realized by the trustee reflecting only the value of the estate's own interest in the property. A competing lien or interest could likewise be dealt with through the estate's abandonment of its own interest in the property or through the Chapter 7 trustee's acquiescence to the debtor's in-kind exemption of that property. In other words, a Chapter 7 trustee would not need to make a further accounting to a competing lienholder if its lien simply passed along with the now abandoned or exempted property.

 However, there are also instances where the Chapter 7 trustee will not address the competing interest as part of the contemplated sale, abandonment, or exemption. For example, if property were to be sold free and clear of a lien pursuant to Section 363(f), then the trustee would be obliged at some later date to still account to the lienholder for its share of the proceeds. Moreover, that accounting would have to be made separate from any distribution under Section 726, for it is only the estate's portion of proceeds from shared property that the trustee may pay out under that section. "Except as provided in Section 510 of this title, **property of the estate** shall be distributed . . . ." 11 U.S.C. § 726(a) (emphasis added).[12]

---

**12.** It is certainly convenient to speak of the competing lienholder as simply having a secured claim against the estate that the Chapter 7 trustee is to administer in the same fashion as he would any other claim. However, Section 726 is very specific that only unsecured claimants are to receive a distribution under Section 726. Indeed, Trustee's reliance upon Section 726 or the related Rule 3009 as somehow also covering "secured claims" in a Chapter 7 setting makes no sense, since the estate's share of the proceeds from a free and clear sale, which is all that the Chapter 7 trustee is authorized to distribute under Section 726, is by definition of Section 541(a) separate and distinct from the competing lienholders' own share of those proceeds. *See also, In re Talbert*, 268 B.R. 811 (Bankr.W.D.Mich.2001).

This, of course, is not to say that a creditor who holds a competing lien in property acquired by the bankruptcy estate does not also have a claim against the Chapter 7 estate. However, for purposes of the administration of the estate, that claim is only an unsecured claim. Moreover, it is eligible for a distribution under Section 726 only if the claimant cannot otherwise be satisfied from the lien it also holds in the subject property.

Trustee in this instance is therefore equally mistaken in his contention that claims allowance under Section 502, as opposed to "lien accounting," if you will, under Section 725, is the authoritative source for the distributions he now proposes to make. The condominium association, for example, has in fact filed a proof of claim with the estate. That claim, though, is only relevant for purposes of Section 726. If, as Trustee hopes, he is given the authority to distribute from the sale proceeds what both the condominium association and he have agreed upon, then one would expect the association to simply withdraw that claim. Should the association refuse, then Trustee's next step would be to object to the association receiving any Section 726 distribution on account of its purported claim because that claim would have already been paid in full by operation of both the settlement reached and Section 725's accounting for the association's attendant lien.

Indeed, the notion of a secured claim is more appropriately discussed in the context of a Chapter 11, 12 or 13 proceedings and then only when the plan is for the debtor or

It is, then, for these occasions that the oft overlooked Section 725 is intended.[13] Again, Section 725 may be ignored when the competing lien or interest has already been disposed of through abandonment, exemption, or a "subject to" sale. However, in this instance Trustee is asking for court authority to distribute to lienholders and purported co-owners their share of sales made long ago. There is, then, no question that Section 725 governs this aspect of Trustee's motion. Consequently, the court must now address how its provisions apply.

### B. *Discretionary v. Conditional Authority.*

Although Section 725 unequivocally requires that there be notice and a hearing before the Chapter 7 trustee may distribute proceeds to lien creditors and other interest holders, it is silent as to what specifically the court is to decide when a hearing must be held.[14] Unfortunately, the absence of such direction is not unique to this section. Granted, there are some instances in the Bankruptcy Code where Congress has provided guidance. For example, the court is not to authorize a trustee's abandonment of properly unless it is

---

another party to continue in possession of the subject property post-confirmation. Or, to put it differently, such proceedings are less about distributing to the debtor's unsecured creditors whatever can be salvaged from the superior interests of competing lienholders and more about reshaping all of the debtor's obligations, both secured and unsecured, so that the debtor or its successor can continue to enjoy the subject properly as it had. Consequently, repaying claims that continue to be secured by liens in property that the reorganized party intends to keep after confirmation of a Chapter 11, 12 or 13 plan makes sense whereas paying a lienholder's share of the liquidation proceeds as a Chapter 7 "claim" under Section 726 does not.

13. Section 725 also can serve as a substitute for abandonment under Section 554 although from a practical point of view there is no need. That is, while properly subject to a lien or co-owner's interest that has not otherwise already been abandoned by the trustee under Section 554(a) should technically be accounted for as part of the Section 725 process, lienholders and co-owners are usually content to have the subject property removed from the estate through the automatic abandonment that inevitably occurs with the closure of the case. 11 U.S.C. § 554(c).

14. The courts and commentators have been equally reticent. For example, *Norton Bankruptcy Law and Practice* offers only the following as its explanation of the process:

To dispose of property pursuant to Code § 725, the trustee must give notice of the intended disposition to parties in interest,

and a hearing must be held if a party in interest requests so or objects to the disposition. With respect to disposition of property left by others which remains unclaimed, the trustee should probably give notice by mail to each identifiable owner and place a newspaper advertisement describing the proposed disposition if no objection is filed In doing so, the trustee gains greater assurance that the disposition will be regarded as procedurally appropriate in the event that it is challenged.

It is not uncommon for the claim recognized by the trustee to be challenged by a different party or the estate, especially where there are one or more gaps in the chain of a party's claim. Disposition of the above mentioned property following the § 725 procedure provides the advantage of having objections to claims considered before disposition of the property, since a change after disposition may be difficult or impossible.

A proceeding under Code § 725 is not an adversary proceeding as defined in Bankruptcy Rule 7001. Disposition pursuant to § 725 is excepted from the scope of Rule 7001, because most attempts to recover or reclaim property under this section do not generate disputes. Given the simplicity of the resulting disposition, the formalities associated with adversarial proceedings under Part VII are not necessary.

William L. Norton, Jr. & William L. Norton III, *Norton Bankruptcy Law and Practice* § 84:2 (3rd ed.2008).

of inconsequential value or it is burdensome, 11 U.S.C. § 554(a), and the court is not to approve the requested compensation of an estate's professional unless the request meets certain guidelines. 11 U.S.C. § 330(a)(3). Yet, for the most part, Congress has not been so accommodating. *See, e.g.*, 11 U.S.C. § 327(a) ("... the trustee, with the court's approval, may employ ..."); 11 U.S.C. § 363(b) ("The trustee, after notice and a hearing, may use, sell, or lease ..."); and 11 U.S.C. § 365(a) ("... the trustee, subject to the court's approval, may assume or reject ...").

As a consequence, courts have been left in these many instances to figure out for themselves what they are to consider. Their response, though, has frequently been limited to only the adoption of some vague standard that in turn is exemplified by some equally vague phrase. Take, for example, the different measures that courts have offered in connection with Section 363(b) sales.

> Section 363(b)(1) of the Bankruptcy Code governs the present dispute and provides that "[the trustee, after notice and a hearing, may ... sell ..., other than in the ordinary course of business, property of the estate.]" 11 U.S.C. § 363(b)(1) (1985).

> \* \* \*

> If there are objections, however, the trustee must seek approval of the proposed sale from the bankruptcy court. The appropriate standard used by courts in reviewing a trustee's recommendation has been enunciated in myriad ways. *See, e.g., In re Schipper*, 933 F.2d 513, 515 (7th Cir.1991) (stating that sales are an exercise of a fiduciary duty that requires an "articulated business justification"); *In re Chung King, Inc.*, 753 F.2d 547, 549 (7th Cir.1985) (opining that the sale must result in the estate obtaining the best price possible under the circumstances); *In re Apex Oil Co.*, 92 B.R. 847, 866 (Bankr.E.D.Mo.1988) (holding that a sale must be both "fair and reasonable" in price and made in "good faith"); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr.D.Del.1987) (holding that the transaction must be "fair and equitable" and in "good faith"); *In re Charlesbank Laundry Co.*, 37 B.R. 20, 22 (Bankr.D.Mass.1983) (stating that the sale must be "in the best interests of the estate and creditors"). These variations all fall under the rubric of the "business judgment" test. *See* 3 Collier on Bankruptcy § 363.02[1][g], at 363–14 (Lawrence P. King, ed., 15th ed. rev. 1997).

*In re Bakalis*, 220 B.R. 525, 531–32 (Bankr.E.D.N.Y.1998).[15]

To adopt for Section 725 one of these standards and be done is certainly tempting. However, each choice is meaningless without context. In other words, "true and blue" would serve just as well as "fair and reasonable" if the task could be confined to just picking one phrase over another. More, though, is expected of this

---

15. The "business judgment" or "business justification" test that *Bakalis* itself appears to endorse derives from *In re Lionel Corp.*, 722 F.2d 1063, 1070. *See also, Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir.1986). However, *Lionel* and *Stephens Industries* are not exactly on point, since each addresses the more specific question of the circumstances under which a Chapter 11 debtor-in-possession may sell substantially all of the estate's assets before confirmation as opposed to as part of the plan itself. As noted in *In re Embrace Systems Corp.*, there is a distinction between what must be considered generally for purposes of Section 363(b) and what must be also considered specifically if the sale contemplated is to precede plan confirmation as well. 178 B.R. 112, 123–25 (Bankr.W.D.Mich.1995).

court. Therefore, at least some thought should be given as to why notice and a hearing are prerequisites to making a distribution covered by Section 725.

As already discussed, the primary objective of a Chapter 7 case is to "collect and reduce to money the property of the estate ... and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1). However, liquidations do not simply happen. Human involvement is required. Therefore, it does not come as any surprise that Section 7( )4(a)(1) also directs that a trustee undertake the liquidation desired.

A trustee, though, is not the only qualified candidate. A committee of creditors could also accomplish the task. So, too, could the debtor. Or the court itself could be the designated agent. In fact, under the former Bankruptcy Act, it was the bankruptcy judge who effectively administered a debtor's liquidation. This is how the Chapter 7 trustee's duties were previously described:

16. Congress has also commented upon how significant the court's involvement had been in the day-to-day administration of a bankruptcy case under the old Act.
 Bankruptcy judges administer the present bankruptcy system (i.e., under the Bankruptcy Act), and are responsible for the administration of individual bankruptcy cases. Their administrative, supervisory, and clerical functions in these matters are in addition to their judicial duties in bankruptcy cases.
 * * *
 The bankruptcy judge supervises the trustee in the performance of his duties, often suggesting causes of action that the trustee might pursue to recover assets for the estate. The bankruptcy judge reviews nearly all transactions that trustees enter into, and rules, usually ex parte, on their propriety. The bankruptcy judge frequently entertains requests for instructions from trustees for even the most routine matters.

Trustees shall (1) collect and reduce to money the property of the estates for which they are trustees, **under the direction of the court,** ...
11 U.S.C. § 47a (repealed) (emphasis added).[16]

■ Section 704, then, is not simply a recitation of a Chapter 7 trustee's responsibilities, It is also a declaration of his emancipation. Others, of course, are allowed their own role with regards to certain aspects of a case's administration. Creditors too may object to the granting of a debtor's discharge, 11 U.S.C. § 727(c)(1), or the allowance of acclaim, 11 U.S.C. § 502(a), and the court itself may seek dismissal of an abusive case. 11 U.S.C. § 707(b)(1). However, there is no question that the Bankruptcy Code places the Chapter 7 trustee at center stage. "The trustee in a case under this title IS the representative of the estate." 11 U.S.C. § 323(a) (emphasis added). It is the Chapter 7 trustee then, and only the Chapter 7 trustee, who is responsible for the administration of the bankruptcy estate and all of the property interests it comprises.[17]

H.R.Rep. No. 95–595 at 88–89 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6049–50.

17. Granted, a party in interest may, for example, compel a trustee through a Section 554(b) order to abandon property of the estate. However, even then it is not the court that actually transfers the subject property from the estate but rather the trustee himself who must effectuate the ordered abandonment Similarly, while the Bankruptcy Code may in some other instances deem property to be removed from the estate even without trustee action (e.g., the exemption of property by operation of Section 522(l) and the abandonment of unadministered property at the close of a case by operation of Section 554(c)), the trustee still controls those aspects of the estate's administration through his ability to object in the case of claimed exemptions and his ability to decide when a case is to be closed in the case of abandonment under Section 554(c).

On the other hand, the shift in control from the court to the trustee precipitated by the Bankruptcy Code does not mean that the court has surrendered altogether its role as an overseer of the liquidation process. Congress, had it preferred, could have certainly turned over all aspects of the bankruptcy estate's administration to the Chapter 7 trustee's sole discretion. For example, decisions to sell or abandon the estate's property could have been left for the trustee to make on his own, with objections being limited to only after-the-fact challenges should it later appear that the discretion given had been abused.

█ However, Congress chose not to give Chapter 7 trustees such free reign in spite of whatever it may have said about removing the courts from the administrative process. Instead, it is fair to say that Congress chose to divide the trustee's ability to conduct himself on behalf of the estate under the Bankruptcy Code into two broad categories: (1) those activities where his authority is purely discretion-ary; and (2) those activities where his authority is conditional.

Section 363 well illustrates both categories. A Chapter 7 trustee, of course, now has under Section 363(c)(1) the discretionary authority [18] to sell property of the estate without any order whatsoever provided that he is otherwise authorized to operate the debtor's business and the contemplated sale is within the ordinary course of that business. Indeed, no order is needed even for an "outside the ordinary course" sale under Section 363(b) provided that proper notice of the intended sale has been given and no timely objection is then filed.[19] In contrast, a Chapter 7 trustee s authority to make non-ordinary course sales under Section 363(b) remains conditional (i.e., a court order must first enter) if a creditor, once notified, does raise an objection. Similarly, the trustee would have to wait for the court to first authorize a proposed Section 363(b) sale were he to forgo simple notice and instead opt for filing an actual motion for the desired relief.[20]

**18.** Neither Section 363(b) or (c) actually includes the word "authority." However, other subsections of Section 363 establish that authority is in fact what is at issue. See, e.g., 11 U.S.C. § 363(c)(2) ("... the court, after notice and a hearing, **authorizes** such use, sale or lease in accordance with the provisions of this section.") and 11 U.S.C. § 363(m) ("The reversal or modification on appeal of an **authorization** under subsection (b) or (c) of this section ...") (emphasis added).

**19.** In this title—
(1) "after notice and a hearing," or a similar phrase—
* * *
(B) authorizes an act without an actual hearing if such notice is given properly and if—
(i) such a hearing is not requested timely by a party in interest;
11 U.S.C. § 102(*l*)(B)(i).

**20.** Some debate has arisen as to whether a court should ever enter an order authorizing a Section 363(b) sale given Section 102(*l*)(B)(i)'s acknowledgment that notice without ensuing objection will suffice. See, also, FED.R.BANKR.P. 6004(a). However, Section 363 itself seems to recognize that the court is to issue an order at least whenever an objection is raised. Otherwise, the appeal of the "authorization" referenced in Section 363(m) could never be made. Cf. 28 U.S.C. § 158(a).

There is no reason, though, to treat the Section 363(b) process as an either/or proposition. It is better instead to view the two approaches as nothing more than options that the trustee may choose between as he sees fit. For example, there may be any number of routine sales where the trustee would prefer the informality of proceeding upon notice alone as provided by Section 102(*l*)(B)(i). Indeed, Rule 6004(d) expands upon this simplified process for sales involving estates with aggregate non-exempt values of under $2,500. On the other hand, there may be instances where the trustee for whatever reason would

This same division between discretionary authority and conditional authority can be seen throughout the rest of the Code. For example, a Chapter 7 trustee no longer must first consult with the bankruptcy judge or, for that matter, anyone else concerning where to store the estate's property, how to insure it, or when to commence litigation to recover it. Similarly, Congress has imposed no restriction upon his prerogative to oppose the granting of a debtor's discharge, to object to the allowance of a claim, or to contest the debtor's attempted removal of the estate's property as exempt His only constraint in proceeding however he pleases is his presumed fear that some party may later call him to account were he to abuse the discretion so entrusted to him.

Then, again, there are provisions that appear throughout the Bankruptcy Code where something more is required of the trustee before he is able to proceed as he would like. However, even within this category there are still nuances. In some instances, Congress was content to leave the court entirely out of the picture so long as the pertinent parties have been given notice and no timely objection has been filed. Section 363(b), with its requirement that there only be "notice and a hearing" before the Chapter 7 trustee may act, is again one example of this type of condi-

tional activity. In other instances, though, Congress has left the trustee no choice but to first seek court approval. For example, Section 327(a) permits a trustee to employ a professional on behalf of the estate only if the court first vets that employment.[21] And finally, there are those provisions, such as Sections 364(b)-(d), where not only prior court approval is required, but where, in contrast to Section 327(a) and its like, notice and a hearing is quite clearly required as well.[22]

How Congress went about deciding whether a particular trustee decision should be conditional or discretionary is not altogether clear. What is evident, though, is that each of these categories requires a different type of court oversight. Indeed, one might argue that Congress' removal of the court from case administration has eliminated altogether judicial oversight of a trustee's discretionary authority. However, the freedom that Chapter 7 trustees now enjoy—that is, the freedom in many instances to bind the estate at their discretion—nonetheless remains subject to the constraints imposed upon them as fiduciaries of the bankruptcy estate. Consequently, a court may still be called upon at some point in time to assess even those decisions that Congress now permits the Chapter 7 trustee to make entirely on his own. For

---

prefer an actual order authorizing a sale. Therefore, the trustee himself may opt for the more formal approach of seeking that relief through a motion, albeit some courts have limited this option through the imposition of local rules. *See, e.g., In re Crowell,* 225 B.R. 334 (Bankr.E.D.Mich.1997). And, of course, there are those other instances when an order may not have been desired but one is nonetheless required because of a timely objection being made.

21. *See, also,* 11 U.S.C. § 365(a) ("... the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease ....") and 11 U.S.C. § 721

("The court may authorize the trustee to operate the business of the debtor....").

22. There are also the Chapter 7 trustee's directed activities. Section 726 is an example of this category, for it contemplates neither notice and a hearing nor court approval. On the other hand, it offers no discretion to the Chapter 7 trustee either. While the trustee certainly is given leeway as to the timing of the contemplated distributions, Section 726 is unequivocal in its requirement that a trustee must make these distributions in the manner prescribed.

example, purely discretionary decisions may come under judicial scrutiny at the conclusion of the case should a party challenge the trustee's requested fees or attempt to surcharge his bond. Similar scrutiny may also be required should the trustee's removal be sought under Section 324(a).

However, the consideration required of the court when only the trustee's discretionary authority is called into question is limited, for what is at stake under that circumstance is simply whether the trustee acted responsibly in exercising the discretion already allowed. In other words, it is not for the court in such instances to substitute its own judgment in hindsight as to what should or should not have been done by the trustee. Rather, it is for the court to determine only whether the trustee, in exercising the discretion given him, had comported himself consistent with the duties required of him as a fiduciary of the bankruptcy estate. Those duties generally are (1) to be obedient (*i.e.*, to act lawfully), (2) to be loyal (*i.e.*, to act without self-interest), and (3) to be careful (i.e., to act competently). *In re Dalen*, 259 B.R. 586, 610 (Bankr.W.D.Mich.2001).

*Ford Motor Credit Company v. Weaver*, 680 F.2d 451 (6th Cir.1982) discusses this type of court review. That case involved an attempt by a creditor of a Chapter XI partnership to hold an individual partner personally liable for his alleged failure to protect the bankruptcy estate during his tenure as the estate's debtor-in-possession. This is what the Sixth Circuit said:

> A trustee in bankruptcy may be liable for violations of his fiduciary duties. A trustee in bankruptcy can be liable in his official capacity or individually. A bankruptcy trustee is liable in his official capacity for acts of negligence. *Mosser v. Darrow*, 341 U.S. 267, 71 S.Ct. 680, 95

L.Ed. 927 (1951); *Sherr v. Winkler*, 552 F.2d 1367 (10th Cir.1977) (Chapter X proceeding); *In re Johnson*, 518 F.2d 246 (10th Cir.1975), *cert denied, subnom, Clark v. Johnson*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975) (Chapter XII proceeding); *United States v. Sapp*, 641 F.2d 182 (4th Cir.1981). The applicable standard is the exercise of due care, diligence and skill both as to affirmative and negative duties. *In re Johnson*, 518 F.2d at 251. The measure of care, diligence and skill required of a trustee is that of "an ordinarily prudent man in the conduct of his private affairs under similar circumstances and with a similar object in view." *Id*, Mistakes in judgment cannot be the basis of a trustee's liability in his official capacity. *Sherr v. Winkler*, 552 F.2d at 1375. The failure to meet the standard of care, however, subjects the trustee to liability in his official capacity. A bankruptcy trustee is liable personally only for acts willfully and deliberately in violation of his fiduciary duties. *Sherr v. Winkler*, 552 F.2d at 1375; *Sapp*, 641 F.2d at 182. The principles governing the liability of a bankruptcy trustee are applicable to a debtor in possession.

*Id.* at 461–62.

*See also, Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir.1977) ("A trustee in bankruptcy may be liable in his official capacity and thus surcharged if he fails to exercise that degree of care required of an ordinarily prudent person serving in such capacity, taking into consideration the discretion allowed."); *In re Johnson*, 518 F.2d 246, 251 (10th Cir.1975) ("It is not necessary to a surcharge of a trustee's accounts that he shall have been guilty of fraud or intentional wrongdoing. It is sufficient that the trustee has failed to dis-

charge a duty required by the law.").[23]

■ If, however, the trustee's authority is only conditional, then it stands to reason that the requisite review of the contemplated activity must be more. At the very least it suggests that those who are entitled by the Code to offer input before the trustee can proceed may include in that input whatever better alternatives they believe are available. In other words, the focus is to shift in such circumstances from considering only whether the trustee's proposal is defensible to whether the proposal made is in fact the best that can be had for the estate.

Again, Section 363 serves well to illustrate this point. As already discussed, the courts have subjected a trustee's proposed sale under Section 363(b) to any number of standards. The Ninth Circuit BAP, though, has reduced the court's consideration of a contemplated sale to simply this:

The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances. The requirement of a notice and hearing operates to provide both a means of objecting and a method for attracting interest by potential purchasers. Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection. Nevertheless, particularly in the face of opposition by creditors, the requirement of court approval means that the responsibility ultimately is the court's.

*In re Lahijani*, 325 B.R. 282, 288–89 (9th Cir.BAP2005).

Or, as my colleague, the Honorable James D. Gregg, has observed:

"When a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold." *In re Integrated Resources, Inc.,* 135 B.R. 746, 750 (Bankr.S.D.N.Y.1992), (citation omitted) *aff'd,* 147 B.R. 650 (S.D.N.Y.1992). In general, a debtor must demonstrate that the proposed purchase price is the highest and best offer.

*In re Embrace Systems Corp.,* 178 B.R. at 123. *See also, In re Bakalis,* 220 B.R. at 532 ("Although a trustee's business judgment enjoys 'great judicial deference', this discretion is not without limit. A duty is imposed upon the trustee to maximize the value obtained from a sale, particularly in

---

**23.** *Weaver's* and *Sherr's* distinction between a bankruptcy trustee's "official" liability and his "personal" liability is confusing, albeit not surprising, given that "the exact parameters of a trustee's fiduciary duties and the potential penalties for breach thereof are not fixed by the Bankruptcy Code, and the case law is somewhat murky at the edges." *In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 6(1st Cir.1999). The confusion, though, is due only to semantics. It is true that a third person who is injured while dealing with the bankruptcy estate may not sue the trustee personally if his injury arises only from the trustee's negligence. *In re Mailman,* 196 F.3d at n. 4. However, it is equally true that the estate's own constituents can hold a trustee individually accountable for not fulfilling his fiducial duty of care and it is in this sense that both *Weaver* and *Sherr* refer to a trustee's liability in his "official capacity." In other words, both of those cases recognize that a bankruptcy trustee can be personally targeted, or as *Sherr* and *Johnson* put it, "surcharged" for breaches of the duty of care owed by him to the estate and its beneficiaries. Indeed, *Mailman* points out that a surcharge "is most fittingly defined as '[t]he imposition of personal liability on a fiduciary for wilful or negligent misconduct in the administration of his fiduciary duties.'" *Mailman, Id.* at 7 (citing BLACK'S LAW DICTIONARY 1441 (6th ed.1990)). *Mailman* then said: "Given this definition, there is simply no principled way after *Mosser* to avoid the conclusion that a bankruptcy trustee can be personally liable for negligent breach of fiduciary duty." *Id.*

liquidation cases."); *In re Psychrometric Systems, Inc.,* 367 B.R. 670, 674 (Bankr. D.Colo.2007); *In re Derivium Capital, LLC,* 380 B.R. 392, 404 (Bankr.D.S.C. 2007); *In re New Era Resorts, LLC,* 238 B.R. 381, 387 (Bankr.E.D.Tenn.1999) (quoting *Embrace Systems*); *In re Broadmoor Place Investments, L.P.,* 994 F.2d 744, 746 (10th Cir.1993) (The court has "the power to disapprove a proposed sale ... if it has an awareness there is another proposal in hand which, from the estate's point of view, is better or more acceptable.") (citations omitted).

What all of these courts are saying is nothing more than this: that there is more to court approval of a proposed Section 363(b) sale than just whether the trustee has brought to the table an offer that will meet the minimum that is required to satisfy his fiduciary responsibilities to the estate. Also open for consideration are all of the other options that might be available. Is a competing bid better? Is an auction preferable to considering only the private offer made? Should the sale be delayed until the market improves?

Nor is there any reason to limit this logic to only Section 363(b) sales, for it is equally applicable to all other trustee activities where the Bankruptcy Code conditions authority upon prior creditor or court approval. For example, more is at stake than just validation of a decision already made whenever court and creditor approval is sought for a proposed Section 364 lending. Adding these parties to the process provides greater opportunity to reflect upon the trustee's proposal, to offer constructive criticism, and even to suggest better alternatives. Indeed, if Congress

had intended anything less, it would have simply left borrowing decisions and the like to the Chapter 7 trustee's discretion along with the myriad of other decisions it now allows him to make on his own without either creditor or court intervention.

However, consideration of what is best for the estate cannot be at the expense of the fiduciary responsibilities otherwise owed by the bankruptcy trustee to the estate. Granted, the two perspectives often coincide. Getting the best price, for instance, will typically reflect well upon the trustee's performance as the estate's fiduciary. What, though, should be the response if the transaction being vetted is the sale of a controlled substance? Should the court authorize the sale of a debtor's stash so long as the best street price is being paid? Of course not, for a trustee is also bound by his duty as a fiduciary to the estate to engage in only lawful activities on its behalf. Consequently, the court could not sanction such a sale no matter how much money the trustee might expect to fetch.[24]

This is admittedly an extreme example. However, courts implicitly, if not explicitly, pass upon the trustee's separate fiduciary duty of loyalty whenever a trustee affirmatively represents, as he must, that he has no personal interest in the sale proposed. And, in fact, even the trustee's fiduciary duty of care must be examined if the contemplated sale is to an insider, for in such instances a trustee cannot rely upon the business judgment rule, but instead would have to establish to the court's satisfaction that every aspect of the sale proposed was consistent with the due care required of him as a fiduciary.[25]

---

**24.** The Seventh Circuit made a similar point in *Donovan v. Robbins* when it observed that cutting off an ear as punishment cannot be part of a court's consent decree no matter

how amenable the parties might be to the concept. 752 F.2d 1170, 1176 (7th Cir.1985).

**25.** *See, also, In re Dalen,* where the application of the business judgment rule was ad-

 The issue of fiduciary responsibility, then, underlies every decision a Chapter 7 trustee makes. Consequently, it follows that a court must pass upon whether the trustee has met those responsibilities whenever a trustee's decision is put before it for consideration. How that opportunity may present itself, though, will vary. Again, the Bankruptcy Code has radically changed the relationship between the court and the trustee. Under the former Act, the court would validate virtually every decision the Chapter 7 trustee made because of its own involvement in the estate's affairs. However, the broad administrative discretion a trustee now enjoys has eliminated such judicial paternalism. Consequently, a court may not have occasion to pass upon the propriety of a trustee's purely discretionary decision until the very end of the case, if at all. Similarly, a trustee, if he chooses, can avoid such an assessment even if his authority to proceed is conditioned upon "notice and a hearing" provided that sufficient notice is given under Section 102(*l*)(B)(i) and no timely objection is made.

 On the other hand, if court review is required before the trustee may proceed, then the court must include in its assessment consideration of whether the proposal made is sound from a fiduciary's point of view. Granted, the separate issue of whether the proposal is also the best from the estate's perspective may overshadow if not subsume altogether this obligation. Nonetheless, every order entered that authorizes a trustee's action, whether it is for the employment of an attorney under Section 327(a) or the sale of an asset under Section 363(b), carries with it the court's acknowledgment that the action to be taken is consistent with the trustee's fiducial responsibilities. Indeed, the advantage to the trustee of still having to vet with the court some of his decisions before proceeding is that the trustee can then rely upon that order to vindicate him in the event a disgruntled creditor should later proceed against him personally concerning the soundness of that decision.[26]

---

dressed with respect to the Rule 9019(a) approval of a settlement:

> If the court concludes that the settlement is not illegal or against public policy, the court must then determine whether the trustee has a personal interest in the subject matter of the settlement. That is, the court must also determine whether the trustee has fulfilled her duty of loyalty to the estate. It is at this juncture that the business judgment rule comes into play. If, after consideration of the record and any third party objections, the court concludes that the trustee is in fact disinterested with respect to the subject matter of the proposed settlement, then the business judgment rule creates the presumption that the trustee also fulfilled her duty of care with respect to reaching that settlement. Conversely, if the court concludes that the trustee's personal interest in the subject matter of the settlement is sufficient to call into question her loyalty to the estate, then it is incumbent upon the trustee to prove that each element of the proposed settlement is reasonable in

> order to eliminate any question that the trustee was motivated by self-interest in reaching the settlement that she did.
>
> 259 B.R. at 612.

**26.** The First Circuit in *Mailman* described the protection afforded to a bankruptcy trustee through the court's orders as judicial immunization.

> Once again, the starting point for our analysis is *Mosser*. In that case, the Court outlined a mechanism through which a bankruptcy trustee may avoid personal liability:
>
> The practice is well established by which trustees seeks instructions from the court, given upon notice to creditors and interested parties, as to matters which involve difficult questions of judgment.... [If the challenged arrangement] was of advantage to the trust, this might have been fully disclosed to the court and the creditors cited to show cause why it should not have been openly authorized.
>
> *Mosser,* 341 U.S. at 274, 71 S.Ct. 680, 95 L.Ed. 927. Following *Mosser,* this court

■ Put simply, a Chapter 7 trustee's freedom under the Bankruptcy Code from the all encompassing oversight of the court has come at a price, that being the inability in many instances to secure comfort from the court that his conduct is appropriate before proceeding.[27] Therefore, the trustee may welcome those opportunities under the Code where he must still secure the court's imprimatur, especially when the action contemplated is controversial. What a court must recognize in turn is that the orders it enters authorizing this trustee activity or that all have this added effect. Consequently, it is incumbent upon the court to evaluate whatever proposal a trustee has submitted for court approval from the perspective of not only whether the best result will be achieved but also whether the trustee is honoring his duties as a fiduciary.[28]

To summarize, several conclusions can be reached regarding the relationship between the court and the bankruptcy estate's trustee that now exists under the Bankruptcy Code:

1. A Chapter 7 trustee's discretionary authority, that is the authority to take legally binding action on behalf of the bankruptcy estate without prior creditor or court approval, is substantially broader under the Bankruptcy Code than it was under the former Act.

2. Although the court may be called upon from time to time to later consider the propriety of a trustee's decision that was clearly within his discretionary authority to make, the court's assessment of that decision is limited to considering only whether it comported with the trustee's responsibilities to the estate. It is not for the court to substitute its own judgment for that of the trustee's. All that matters is whether the trustee met the standard expected of any other fiduciary under the circumstances.

3. There remain, though, many activities under the Bankruptcy Code where the trustee's authority to proceed on behalf of the estate is conditioned upon the approval of creditors, the court, or both. In those instances where the Bankruptcy Code requires only that

---

has explained that a trustee acting with the explicit approval of a bankruptcy court is entitled to absolute immunity, as long as there has been full and frank disclosure to creditors and the court. *See Lopez–Stubbe*, 847 F.2d at 942 (citing *Mosser*, 341 U.S. at 274, 71 S.Ct. 680, 95 L.Ed. 927). This view has found near-universal favor elsewhere. *See, e.g., Yadkin Valley*, 819 F.2d at 76; *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir.1986); *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. Unit A Mar.1981) (per curiam). Only if a trustee prevaricates or otherwise acts in bad faith does he doff the cloak of derived judicial immunity. *See Kowalski–Schmidt*, 212 B.R. at 624. 196 F.3d at 8.

**27.** Indeed, it makes no sense for Congress to have revised the relationship between the courts and bankruptcy trustees as it did if trustees may still appear before the court whenever they choose to procure its blessing

for this particular decision or that. Unless expressly provided otherwise, Congress expected Chapter 7 trustees under the Bankruptcy Code to rely upon their own judgment, as opposed to the court's, in making the many decisions required of them during the administration of a case.

**28.** Of course, the court cannot properly assess the fiduciary implications of whatever the trustee is vetting before it unless the supporting notice or motion fully discloses what is involved. Presumably, the trustee has ample reason to be forthright in his disclosure given that anything less could put the transaction at risk of later being avoided as fraudulently procured, Rule 9024 and Fed.R.Civ.P. 60(d)(3), and perhaps put even the trustee himself at risk of criminal prosecution. 18 U.S.C. § 157(2). *See also, Mailman Steam*, 196 F.3d at 8 (A court order will not immunize a trustee unless there has been "full and frank disclosure to creditors and the court").

there be "notice and a hearing" as a condition to proceeding, the trustee may forgo cóurt intervention if proper notice is given and no timely objection is made. If, however, (a) the Bankruptcy Code requires court authorization as a condition precedent, (b) only notice is required but a timely objection is made, or (c) the trustee himself files a motion for the requisite authority, then the court must review the activity proposed and then enter an order that either gives or refuses the authority sought.

4. The court, in determining whether to give that authority, is to consider whether the trustee's proposal is the best among all alternatives that are brought to its attention and, in doing so, must give those who have standing to oppose the trustee's proposal the opportunity to suggest other alternatives that might be better. However, the court's consideration must also include an assessment of whether the proposal is consistent with the trustee's fiduciary responsibilities since under no circumstance may the trustee act on behalf of the estate in a manner inconsistent with the duties imposed upon him as a fiduciary.

C. *Application to Section 725.*

■ Section 725, like Section 363(b), conditions the Chapter 7 trustee's authority to proceed as contemplated only upon there first being "notice and a hearing." Consequently, Trustee could have, had he chosen, attempted to secure the necessary authority to make the distributions he proposes by simply serving a notice of his intentions upon the creditor body pursuant to Rule 6007(a) with the hope that no objection would then be filed. However, Trustee chose instead to get the required authority by formally requesting an order from this court and, in any event, the objections made by Mr. Engman and Ms.

Ludwick would have involved the court even had Trustee chosen the more informal process. Consequently, for the reasons already given, this court is necessarily called upon to decide both whether the distributions Trustee purposes to make to the lienholders and other co-owners is in the best interests of the estate and whether the distributions are otherwise consistent with Trustee's responsibilities to the estate as its fiduciary.

■ Proofs, then, for the evidentiary hearing precipitated by the two objections will not only include those relevant for determining whether Trustee's plans are sound based upon what is expected of him as a fiduciary but also will include whatever Mr. Engman or Ms. Ludwick might wish to offer as better alternatives than what Trustee proposes. Trustee, as the movant, shall have the burden of proof on all issues except that the burden will shift to Mr. Engman and Ms. Ludwick as to whether Trustee's proposal is consistent with his duty of care if Trustee establishes that his own involvement in the proposed distributions is disinterested. This shift in the burden is justified because of the so-called "business judgment rule." *In re Dalen,* 259 B.R. 586, 611 (Bankr. W.D.Mich.2001).

If Trustee prevails, then an order will enter authorizing Trustee to make the distributions proposed. If, on the other hand, Mr. Engman and Ms. Ludwick prevail, then an order will enter denying Trustee that authority together with instructions to continue administering the sale proceeds currently held. Such administration, of course, would necessarily involve Trustee at some later date filing a new Section 725 motion since it would appear that Trustee cannot proceed with any final distribution under Section 726 without first addressing

these purported lienholders and co-owners through a Section 725 distribution.

 As a final aside, the court notes that Trustee's motion, with its emphasis on Rule 9019(a) settlement approval rather than Section 725 authority, is figuratively the tail wagging the dog. In hindsight, Trustee should have brought all issues to bear by filing only a Section 725 motion since, as now explained, a Section 725 order authorizing the distributions would have addressed the fiduciary issues implicated by Trustee's Rule 9019(a) settlement motion as well.[29]

29. This last point is more than a casual observation. As discussed in detail in both *Dalen,* and again in *In re Novak,* 383 B.R. 660 (Bankr.W.D.Mich.2008), settlements on behalf of the estate fall within a bankruptcy trustee's discretionary authority under the Bankruptcy Code. However, as also explained, Rule 9019(a) provides a trustee with the rare opportunity to still vet with the court the fiducial propriety of this purely discretionary decision before consummating the settlement reached. *See, Dalen* at 599 and *Novak* at 675. Unfortunately, the advantage that Rule 9019(a) offers is not necessarily complete, for as I previously determined in this same case, the discretionary aspect of such settlements precludes the trustee from also being reimbursed from the estate for the professional fees associated with securing such approval should it be contested. *In re Engman,* 389 B.R. 36, 50–51 (Bankr.W.D.Mich. 2008) (Holding that attorneys fees incurred in a contested Rule 9019(a) motion cannot be approved as a necessary expense for the administration of the case because settling matters under the Bankruptcy Code is within the trustee's discretionary authority and, as such, no court order was needed in order to bind the estate to the settlement reached.).

If, however, that settlement is part and parcel of some other activity for which court approval is a condition precedent, as is the case here, then no separate Rule 9019(a) motion would be needed to secure the desired imprimatur. Rather, the soundness of the trustee's decision to settle would be necessarily addressed as part of the court's overall review of the activity for which its approval is needed. In addition, the trustee would not be impeded from recovering his attorneys fees should the relief be opposed since under that circumstance the authority sought would be clearly conditional and, as such, the trustee could legitimately maintain that he had to incur those fees in order to proceed with the administration of the estate. *See,* 11 U.S.C. § 330(a)(3)(C) ("In determining the amount of reasonable compensation to be awarded ..., the court shall consider ... whether the services were necessary to the administration of ... a case[.]"); 11 U.S.C. § 330(a)(4)(A)(ii)(II). Or, to put it differently, the conditional nature of the authority sought obligated the trustee to invoke the court's intervention and, as a consequence, the trustee had no choice but to overcome all objections before he could proceed with this aspect of the case's administration.

Consequently, my current reflections concerning Section 725 and its relationship to Rule 9019(a) has led me to conclude that I was wrong when I concluded years ago that the distributions from proceeds that the former trustee was then proposing to make to the condominium association were discretionary in nature and that, as such, the court's review of the same could only be made under the rubric of a Rule 9019(a) settlement approval. *In re Engman,* 331 B.R. 277, 288 (Bankr.W.D.Mich.2005). Instead, the analysis should have been under Section 725, with the question being whether the court should authorize the former trustee under that section to distribute the liened portion of the sale proceeds claimed by the condominium association as he was proposing notwithstanding Mr. Engman's objection.

This acknowledgment does not change the outcome of that prior hearing, for I ultimately concluded that the former trustee's proposal did not even meet the minimum standards required of him as a fiduciary. *Id.* Therefore, the court could not have given him the requisite authority to proceed even with Section 725 being the governing provision. However, this acknowledgment does undermine the premise upon which I later disapproved the fees incurred by the former trustee in securing the contested approval, *In re Engman,* 389 B.R. 36 (Bankr.W.D.Mich.2008), since the former trustee clearly had to incur the fees he did in overcoming Mr. Engman's objection in order for him to proceed with the accounting to the condominium association that Section 725 required as part of the estate's administration.

## CONCLUSION

Almost 30 years have passed since the Bankruptcy Code was first enacted. Consequently, both courts and commentators have had ample opportunity to expound upon nearly every nook and cranny of its many provisions. The 387 volumes of reported bankruptcy cases in this court's own library attest to the considerable attention it has been given.

The benefit of this written discourse is readily apparent. However, for better or worse, it also has placed a varnish upon what Congress originally enacted. Consequently, the obscurity Section 725 has enjoyed for all these years presents a rare opportunity to virtually step back in time to consider the Bankruptcy Code once again in its pristine state. In a sense, the Galapagos Islands offered the same opportunity to Charles Darwin, albeit the observations he derived from that laboratory are hopefully far more controversial than the observations this court has derived from Section 725.

What Section 725 does reveal are certain fundamentals concerning case administration. They include: (1) that trustees, as opposed to bankruptcy judges, are to administer bankruptcy estates; (2) that trustees are presumed to have the authority to act on the estate's behalf at their sole discretion, subject only to the accountability they owe as the estates' fiduciaries; (3) the exceptions to this broad authority are only those where the Bankruptcy Code itself specifically subjects a particular trustee activity to prior creditor or court review; and (4) such review by its very nature requires consideration of not only whether the action proposed is sound from a fiduciary's point of view but also whether it is the best course to take among all of the alternatives available.

These fundamentals in turn establish a much sounder analytical framework for assessing the many different trustee activities that must still be judicially reviewed. With respect to the case at hand, this court is well satisfied that the authority Trustee now seeks under Section 725 to proceed cannot be given over Mr, Engman's and Ms. Ludwick's objections unless Trustee can establish that both what he proposes is consistent with his duties as the estate's fiduciary and what he proposes is better than whatever Mr. Engman or Ms. Ludwick might offer as alternatives.

As already rioted, this opinion supplements the order already entered by this court. Therefore, no further order will enter.

This is not to say, though, that the former trustee is exonerated with respect to how he previously proposed to deal with the association's lien. The fact remains that the court found after a contested hearing that the distribution the former trustee proposed was deficient even when judged against only what would be minimally expected of a fiduciary. Consequently, Mr. Engman may still have reason to challenge the former trustee himself for his decision to spend over $30,000 in attorneys fees in connection with his efforts to secure the authority needed to make such a questionable distribution. However, that is an issue for Mr. Engman to take up with the former trustee, and not the bankruptcy estate's attorneys.